MARY E. LITTLEFIELD *vs.* ELIZABETH PAUL & another.

York.    Opinion June 7, 1879.

*Dower,—bar of.    Statute.*

The statutory provisions of this state cover the whole subject of dower; and the court must look to them alone for the extent of the right of a widow to dower, and for the modes and manner in which she may be legally barred of her action therefor.

If the Stat. of Westminster 2, 13 Edwd. I., c. 34, was in force in Massachusetts when our constitution was adopted, the subject embraced in it is fully covered by our statutory provisions, and the provisions of that statute are thereby superseded.

"If a wife willingly leave her husband and go away and continue with her adulterer," she is not thereby "barred of action to demand her dower" by the law of this state, unless her husband procures a divorce therefor.

ON FACTS AGREED.

ACTION OF DOWER.   Marriage, seizin, death of husband and demand of dower admitted.   Also, that demandant was married to Rosewell M. Littlefield, of Wells, in York county, deceased, October 30, 1837, and cohabited with him in this state several years; that she afterwards left the house of said Rosewell and went to Massachusetts, and there lived in adultery, although having gone through the forms of marriage, with another man, by whom she had several children, and never returned to her husband; that said Rosewell also lived in adultery with two other women, with whom he had gone through the forms of marriage, and had children by them; that said Rosewell became seized of all the real estate in which dower is demanded in this action under the will of one Isabella Littlefield, with whom he lived in adultery, which will was dated October 15, 1853, and subsequently proved in probate court, except thirty-five square rods, which he purchased of Samuel Weeks, by deed of April 22, 1851; that no divorce was ever decreed between the demandant and said Rosewell; that said Rosewell conveyed to the tenant February 23, 1863.   Judgment to be entered by the full court, as the law may require.   Plaintiff to carry the case to the law court.

*Charles C. Hobbs,* for the plaintiff.

*George C. Yeaton*, for the defendants, among other things, said :

This action presents the single question whether elopement and adultery are a bar of dower.

Statute of 13 Edwd. I., c. 34, provided that a wife, voluntarily leaving the husband and living in adultery, was thereby barred of her dower. "The best construction of which statute," says Willes, J., in *Woodard* v. *Dowse*, 10 C. B. (N. S.) 100 E. C. L. 722, 732, " seems to be that the leaving *sponte* is not of the essence of the offense which leads to the forfeiture. It is enough if, having left her husband's house, the woman afterwards commits adultery."

That the facts bring the case at bar fully within the provisions of this statute cannot be questioned. Is this statute law in Maine ? The question is *res integra*. It should be so held.

I. From the nature of the dower itself.

1 Wash R. Prop. 146, defines dower as the " provision which the law makes for a widow, out of the lands or tenements of the husband, for her support and the nurture of her children." And substantially similar definitions are given by all the text writers. *Vide passim*, Bouv. Dic. Tit. Dow. Schoul. Dom. Rel. 183. 2 Black. Com. 130 ; which latter authority still more pointedly inserts before children the word " younger."

To assert that the law of any civilized society could ever contemplate appropriating a portion from the estate of a man, wronged as only a wife could wrong a man, for the support of an adulteress, and the nurture of the very children ( the word " younger " imports it) whose guilty parents, while procreating them, the same law suffers the outraged husband to slay with comparative impunity, is a proposition so monstrous that it can scarcely stand without the support of an absolutely mandatory statute. No court could to-day arrive at such a conclusion otherwise.

II. Upon authority.

The Stat. 13 Edwd. I., c. 34, has been in terms re-enacted in some states, and declared to be the common law in others. 1 Wash. R. Prop. 196. Note to *Woodward* v. *Dowse*, 100 E. C. L. 722, 733.

In 1 Greenl. Cruise R. Prop. 156, Mr. Greenleaf says, in a note under the text referring to this Stat.: "Such is understood to be the common law of the United States;" again, 176, n., "It is believed to be held as the common law of this country in all the states originally settled by English colonists or their descendants," citing 4 Dane's Abr. 672, 676. 4 Kent. Com. 53. *Coggswell* v. *Tebbetts,* 3 N. H. 41.

Kent (loc. cit.) says : " There is so much justice in it that an adulterous elopement is probably a plea in bar of dower, in all the states of the Union, which protect and enforce the right of dower."

But, after a tolerably diligent search, we are unable to find any state barbarous enough to deny that this statute was the common law in that state, except only in those states which have held that no English statute, unless expressly adopted, was law, and those states where the whole subject of dower was expressly provided for in their own statutes.

But *Lakin* v. *Lakin,* 2 Allen, 45, holds the statute in question not law in Massachusetts.

Mr. J. Chapman in that case, while admitting that "the authorities seem to indicate that the provisions of this statute have been in force " in Massachusetts, claims that " the question has never been thoroughly discussed " by the Massachusetts court, and distinctly places the decision upon three grounds :

(1.) Express statutory provision, c. 76, § 32, that " she shall not be entitled to dower in any other case of divorce " than divorces against the husband for his fault.

(2.) At common law adultery " was not a cause of divorce," so that it could not be made a bar by means of a divorce obtained by the husband.

(3.) By failing to apply for his divorce, which he might have had, the husband had preferred to bury the scandal, and third parties should not be suffered to first raise the question.

As to ground (1), it is to be observed that our statutes, while providing dower for the wife in case of divorce from husband, (R. S., c. 60, § 7,) and for husband's interest in the wife's estate, when divorced from her (R. S., c. 60, § 8), not only contain no

provision denying her dower in such case, but are wholly silent as to the effect of a divorce for her fault upon her dower.

As to ground (2), with great deference, it is suggested that this is not an accurate statement of the common law, for it was only in 1602 that adultery ceased in the courts of England to be ground for either a divorce *a vinculo,* or a divorce, though in terms *a mensa et thoro,* yet consequent upon which followed the right to remarry ; and certainly both wives (if the husband had two) could not have dower at his death in such cases. Vide Art. 6, 1 Law Review (English) 353, 360.  3 Salk. 138.  Glanv. 44.  Bract. 92. 18 Edwd. IV., 45.  Macqueen, H. L. & P. C. 470, 473.

Hence the Stat. 13 Edwd. I., c. 34, having been passed in 1285, was in force more than three hundred years, during which a man could have barred dower by availing himself of existing law in the courts ; and when, in 1602, ecclesiastical aggression robbed the courts of their jurisdiction to grant divorces *a vinculo,* or with equivalent privileges, immediately grew up the parliamentary practice of granting them, which continued down to 1858. So that the statement that " her mere adultery could not be made a bar by means of a divorce " must be declared inaccurate.

As to ground (3), in the case at bar, the husband could not have had a divorce, for his own adultery was a bar ; R. S., c. 60, § 18, has been law since 1821, c. 71, § 4, so that, whatever force the reason may have abstractly, it has no application here.

In New York the statutes expressly bar the wife of dower only upon a conviction of adultery." *Pitts* v. *Pitts,* 52 N. Y. 593. *Schiffen* v. *Pruden,* 64 N. Y. 47.

In Pennsylvania also the statutes expressly control.  *Reed* v. *Elder,* 62 Penn. St. 308.

In Rhode Island it is held that this statute was never introduced.  *Bryan & wife* v. *Batchelder,* 6 R. I. 543.  But in that state, it seems, no English statute is held to be law, unless expressly re-enacted there, and in this case the court declared : " It may at first seem singular that our law should be so regardless of what seems so just and reasonable a ground of forfeiture."

In New Hampshire the statute was admitted to apply to that state in *Coggswell* v. *Tebbetts,* 3 N. H. 41.

In *Cochrane* v. *Libby*, 18 Maine, 39, at *nisi prius*, the jury were instructed that this statute was " the law in this state," and the opinion of the full court impliedly recognized the soundness of the instruction.

III. Public policy forbids that such a woman should be enabled to deplete a dead man's estate, to the detriment of innocent heirs-at-law ; as no man would incline to accumulate property if it were subject to such depredation.

Adoption of English statutes (generally). *Sackett* v. *Sackett*, 8 Pick. 309, 316. *Going* v. *Emery*, 16 Pick. 107, 115. *Com.* v. *Chapman*, 13 Met. 68.

All existing at date of settlement of the country, not unsuited to the character of our institutions.

Con. Maine, Art. 10, § 3 : " All laws now in force . . remain until altered or repealed by legislation." *Colley* v. *Merrill*, 6 Maine, 50, 55.

No repeal by implication " if the implication does not necessarily follow from the language used." *Pratt* v. *A. & St. L. R. R. Co.* 42 Maine, 579, 587.

LIBBEY, J. The defendants claim that by the statute of Westminster 2, 13 Edward I., c. 34, the plaintiff is barred of her dower. The fourth clause of that statute reads as follows : "And if a wife willingly leave her husband and go away, and continue with her adulterer, she shall be barred forever of action to demand her dower that she ought to have of her husband's lands, if she be convict thereupon, except that her husband willingly, and without coercion of the church, reconcile her and suffer her to dwell with him, in which case she shall be restored to her action."

If this statute is a part of the common law of this state, as construed by the English courts, the plaintiff is barred of her action. So far as we are aware, in this state it has been invoked as a defense to an action of dower but once. *Cochrane* v. *Libby*, 18 Maine, 39. In that case the question whether it was in force in this state was not discussed by the counsel or the court. Weston, C. J., says : " The second marriage of the demandant is

relied upon as evidence of adultery. If this is a bar to her claim, and set up as such, the tenant is bound to prove the fact affirmatively. This he has not done." So the question may be regarded as fairly before the court for the first time.

The question was before the court in Massachusetts, from which we derived our common law, in *Lakin* v. *Lakin*, 2 Allen, 45. In the opinion of the court, Chapman, J., says: " The authorities seem to indicate that the provisions of this statute have been in force in this commonwealth. 4 Dane Ab. 676. 1 Cruise Dig. Green. Ed. Tit. 6, c. 4, § 4, note 2. 1 Wash. R. Prop. 196. But the question has never been thoroughly discussed in our judicial tribunals ; and there are strong arguments, growing out of our colonial and provincial legislation in regard to dower, adultery and divorce, and also out of the other circumstances of the colony, which show that its adoption here was not in con-. formity with the condition and habits of our people."

We think it may well be doubted whether this statute was ever a part of the law of this state. But it is unnecessary to decide this question, as it appears to us that the legislation of this state has covered the whole ground embraced in that statute, and has established the rules by which the rights of the parties must be determined. Our first legislature, in 1821, by its acts, defined and regulated the subjects of dower and divorce.

Chapter 40 defined the rights of a widow to dower in the lands of her deceased husband, and prescribed the manner in which it should be assigned her. Section 6 provides " that the estate in which a widow shall have the right to claim dower by this act is all such lands, tenements and hereditaments of which the husband was seized in fee, either in possession, reversion or remainder, at any time during the marriage, except where such widow, by her consent, may have been provided for by way of jointure, prior to the marriage, or where she may have relinquished her right of dower by deed under her hand and seal."

Chapter 38, § 15, gave her the right in all cases to waive the provision made for her in the will of her deceased husband and claim her dower and have the same assigned her in the same manner as though her husband had died intestate.

These acts contain the only grounds on which a widow could be barred of her dower. She was entitled to dower in the lands of her deceased husband unless she was barred in one of the modes named in the statute. The provisions of the statute of Westminster 2 were not recognized as a bar. *French* v. *Peters,* 33 Maine, 396.

But chapter 61 of the acts of that year, regulating divorces, embraces the same subject, so far as to enable a husband to bar his wife of right to dower for her adultery, whether she eloped and continued with her adulterer or not. By section 3 a divorce may be granted for the adultery of either party. By section 5 when a divorce shall be granted for the adultery of the husband, the wife shall have dower in the lands of her husband, to be assigned to her in the same manner as if he was naturally dead. " And when the divorce shall be occasioned by adultery committed by the wife, the husband shall hold her personal estate forever, and her real estate during his natural life, in case they have issue born alive of her body during marriage ; otherwise, during her natural life only, if he shall survive her ; provided, nevertheless, that the court may allow her for her subsistence so much of such personal or real estate as they shall judge necessary."

This statute defines and limits the rights of either party in the property of the other when a divorce is granted for adultery, and in case of adultery of the wife, even though she does not continue with her adulterer, the husband, if he desires to do so, may, by divorce, bar her of dower in his lands ; or he may, as he might do under the provisions of the statute of Westminster, condone the offense so that her right to dower shall not be impaired. True, the statute does not in terms say that a wife, divorced for her adultery, shall not have dower in her husband's lands after his death ; but that is not necessary. It follows as a legal result, for, to entitle her to dower, she must have been the wife of him under whom she claims at the time of his death ; otherwise she is not his widow. 2 Black. Com. 130. 4 Kent Com. 54. *Stilphen* v. *Houdlette*, 60 Maine, 447.

The provisions of R. S., c. 60, §§ 7, 8, defining the rights of husband and wife in the property of each other in case of divorce,

are the same as the act of 1821, except that the wife is entitled to dower when the divorce is for the fault of the husband; and if the divorce is for adultery of the wife, the husband has no rights in her property held under the provisions of c. 61.

Chapter 103, R. S., defines the rights of a widow to dower in the lands of her deceased husband, and prescribes the modes and manner in which she may be legally barred thereof.

By section 1, " every woman shall be entitled to her dower at the common law in the lands of her husband, with the exceptions hereafter mentioned, to be assigned to her after his decease, unless lawfully barred."

By section 6, a married woman of any age may bar her right of dower in an estate conveyed by her husband, by joining in the same deed or a subsequent deed, or by her sole deed.

By section 7, a woman may be barred of her dower in her husband's lands by a jointure settled on her by her consent before marriage, in the manner therein specified.

By section 8, she may be barred of dower by a pecuniary provision, made for her by her intended husband in lieu of dower, consented to by her as provided in § 7.

By section 9, if such jointure or pecuniary provision is made before marriage without the consent of the intended wife, or if made after marriage, it shall bar her dower, unless within six months after her husband's death she elects to waive such provision as therein provided.

By section 10, when a specific provision is made in her husband's will for the widow, within six months after probate thereof, she shall make her election whether to accept it or claim her dower.

By c. 61, § 6, a husband and wife, by a marriage settlement executed in the presence of two witnesses before marriage, may determine what rights either shall have in the other's estate during the marriage, and after its dissolution by death; and may bar each other of all rights in their respective estates not so secured to them.

We are of opinion that these statutory provisions cover the whole subject of dower, and that the court must look to them,

and to them alone, for the extent of the right of a widow to dower, and for the modes and manner in which she may be legally barred of her action therefor. If the statute of Westminster 2 was in force in Massachusetts when our constitution was adopted, the subject embraced in it is fully covered by the statutory provisions cited, and its provisions are thereby superseded.

But it is urged against this conclusion that the plaintiff could not have been barred of her dower by her husband by a divorce for her adultery, because he had committed the same crime, having lived in adultery with two other women, with whom he had gone through the forms of marriage, and had children by them. R. S., c. 60, § 18.

This is true ; but if the husband, by his own crime, deprived himself of the right to a divorce for the adultery of his wife, and thereby acquire rights in her estate and bar her of dower in his lands, after his death, it was his own fault and he could not complain. It is the policy of the law that, where husband and wife are equally guilty of adultery, neither shall be permitted to go into court and accuse the other, and thereby affect their rights to property ; and the same policy requires that neither their heirs, devisees nor grantees should be permitted to do so.

It is unnecessary to discuss the wisdom or morality of the policy which induced our legislature to enact our statutory provisions upon this subject rather than the provisions of the statute of Westminster. The reasons that may have induced such action are well stated by Chapman, J., in *Lakin* v. *Lakin, supra*. It is sufficient for us that the legislature has clearly declared the rules by which the rights of the parties must be determined.

The facts contained in the agreed statement constitute no bar to the plaintiff's action.

*Judgment for the plaintiff*
*for her dower.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.