(No. 2221.   Oct. 23, 1919.)

TRANNIE L. BEALS (formerly Trannie L. Ares) by J. D. Walker, her Committee, v. PAUL ARES.

(Rehearing denied Nov. 29, 1919.)

SYLLABUS BY THE COURT.

1.   The prayer for relief is not a part of the complaint and cannot be considered as adding to the allegations.      P. 476

2.    Where, in a divorce suit, the complaint alleged that the
plaintiff therein had purchased from the defendant, his wife,
all her interest in the community property, and her separate
property, for an adequate consideration, and contained no al-
legation as to an adverse claim, no issue in regard to the prop-
erty rights of the parties was tendered by the complaint, and
a decree entered therein purporting to quiet the title of the
real estate in and to the husband, was without the issues
tendered by the pleadings, hence was not res adjudicata as to
the property rights of the parties.                      P. 476

3.    Under the civil law of Spain and Mexico the wife for-
feited her matrimonial gains, (1) when she had been guilty of
adultery; (2) when she had abandoned her husband without
his consent; and (3) when she had joined some religious sect
and therein married or committed adultery.               P. 477

4.    The case of Barnett v. Barnett, 9 N. M. 205, which held
that the civil law of Spain and Mexico, relative to property
rights of the husband and wife, was in force in this jurisdic-
tion, after the adoption of the common law and the repeal of
section 1365, C. L. 1884, in 1891, overruled.   Held that since
the adoption of the common law in 1876 as the rule of practice
and decision, by the legislature of the territory, that the com-
mon law, in the absence of statute, is the rule of decision in
this jurisdiction; that by the adoption of the common law the
civil law was completely supplanted except as it had been in-
corporated into the statutes of the territory.   Strong v. Eakin
11, N. M. 107; Reede v. De Lea, 14 N. M. 442, which followed
the Barnett case, overruled in so far as such cases hold that
the civil law governing property rights of husband and wife is
in force in this jurisdiction.                           P. 479

5.    Since the adoption of the common law in New Mexico it
is as much the rule of decision in this state as in those in
which it was the law from the beginning of their political
existence.                                               P. 479

6.    When the legislature in 1876 adopted the common law
as the rule of practice and decision the whole body of that
law, as limited in the case of Browning v. Estate of Browning,
3 N. M. 659, came into this jurisdiction.   Where it found a
statute counter to its provisions, it yielded to the statute, but
it gave way only in so far as the statute conflicted with its
principles.   In so far as was possible it operated in conjunc-
tion and harmony with the statutes.   If a statute conflicted
with it, it bided its time and upon repeal of the statute be-
came again operative.                                    P. 479

7.    The statutes in force in this jurisdiction regulating
property rights of husband and wife were patterned after
the civil law of Spain and Mexico, and the courts of the state
would look to the civil law for the purpose of interpreting and
expounding the statute, but provisions of the civil law on the

subject not incorporated into the statutes are not in force in this jurisdiction.                                         P. 479

8. Dower, under the common law, was the portion of lands or tenements which the wife had for the term of her life of the lands and tenements of her husband after his decease for the sustenance of herself and the nurture and education of her children.                                         P. 489

9. The statutes of the state, sections 2774, and 2781, Code 1915, and Chapter 37, Laws 1907, construed. Held that under these statutes the wife has an interest in the community property equal with that of the husband; that the husband by the statute, while made manager and agent of the community, has no greater interest in the property than the wife; that the British statute (13 Edw. 1, Stat. 1, C. 34) under which the wife forfeited her right of dower by willingly leaving her husband and living in a state of adultery, has no application in this jurisdiction, because at common law the wife had no interest in the property of her husband but merely an expectancy. The statute referred to not being applicable and there being no statute in this state forfeiting the wife's interest in the community property by the commission of adultery, no authority exists in the court to divest her of her interest for such cause.                                         P. 489

10. In the absence of a statute conferring upon the court power to apportion the community property between the spouses, giving to the one a greater interest therein than such party had in the community, the court has no such power.
                                         P. 489

11. Section 2778, Code 1915, construed. **Held** that the statute does not authorize the court to apportion the community property between the spouses in its discretion; that the statute authorizes the court to set apart out of the property of the parties such portion thereof as may be required for the support, maintenance and education of the children, and to set apart such part of the husband's property as alimony as may be necessary for the support and maintenance of the wife.                                         P. 489

12. Section 2750, Code 1915, which authorizes the husband or wife to enter into any engagement or transaction with the other respecting property which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other, construed. Held that where the husband enters into an agreement with his wife whereby she transfers to the husband her interest in the community property for a grossly inadequate consideration, that the husband in regard to the transaction stands in the position of trustee and that he owes to the wife the duty of a full and fair disclosure as to the value of the property, and that he must pay an adequate consideration therefor.                                         P. 501

13.   Persons standing in confidential relations towards others cannot entitled themselves to hold benefits which those others may have conferred upon them, unless they can show to the satisfaction of the court that the persons by whom the benefits have been conferred had competent and independent advice in conferring them.                              P. 501

14.   Where a husband in contemplation of a divorce, through his attorney, made a property settlement with his wife by which he acquired from her her interest in community property, worth approximately $100,000 for $4,000 the burden was upon the husband in an action by the wife to set aside the deeds and contracts, to show: (a) the payment of an adequate consideration; (b) full disclosure by him as to the rights of the wife and the value and extent of the community property; and (c) that the wife had competent and independent advice in conferring the benefits upon the husband.
                                                  P. 501

Appeal from the District Court, Eddy County, McClure, District Judge.

Suit by Trannie L. Beals, formerly Ares, by her committee, against Paul Ares, to cancel deed, avoid portions of divorce decree and establish her community property rights.   Judgment for defendant.   Plaintiff appeals.   Reversed and remanded with directions.

BUJAC & BRICE, of Roswell, and GEORGE L. REESE, of Portales, for appellant.

It is the general rule, unless otherwise controlled by statute, that community property will be equally divided between the former spouses upon divorce being granted.

McKay on Community Property, Secs. 411-413-425; Scott v. Scott, 170 S. W. 273; Ballinger on Community Property, Sec. 32-87; Johnson v. Johnson, 11 Cal. 200; Sec. 30, Chap. 62, Acts of 1901; Revised Statutes 1915, Secs. 2750, 2766, 2767, 2772, 2774, 2781; Chap. 84, Acts of 1915; Kohny v. Dunbar, 21 Ida. 248; 39 L. R. A. (N. S.) 1107; Re Burdick, 112 Cal. 387; Warburton v. White, 176 U. S. 485; Arnett v. Reade, 220 U. S. 311; Dixon v. Executors, 4 La. 97; Saul v. His Creditors, 160 A. D. (La.) 212.

If the community property system of the Spanish-Mexican law has been in force in New Mexico since the legislature of the Territory enacted legislation on this subject, such law was displaced and repealed by Chapter 62 of the Acts of the 24th legislative assembly of the Territory of New Mexico, and has not been in force since said date (March 20, 1901); and does not govern the rights of property at this time.

Chapter 62, Acts of 1901; McKay on Community Property, P. 661; Arnett v. Reade, 220 U. S. 311; Byrne v. Byrne, 3rd Texas, 336; Routh v. Routh, 57 Texas 589; McKay on Community Property, Sec. 510; Revised Statutes of 1915, Secs. 2772-2774-2778-2781.

Upon granting of a divorce the former spouses become the owners of the community property as tenants in common.

McKay on Community Property, Sec. 413; Ambrose v. Moore, 90 Pac. 586; Revised Statutes 1915, Sec. 2781; 126 A. S. R.; P. 100—note; 86 A. D.; P. 628—note.

Under the community system in those states which hold the wife's interest to be "feigned" or a "mere expectancy." the title of the property is in the husband and the wife has no present interest that she should convey and if such rules were in force in New Mexico on the date appellant executed the deeds, bill of sale and contract in question in this suit, then no title passed by reason of such instruments.

Ballinger on Community Property, Sec. 80; 21 Cyc. 1668; Rico v. Blandenstein, 33 Pac. 480; Protezel v. Schroeder, 83 Tex. 684; In re Burdick (112 Cal. 387, (44 Pac. 734).

The interest of the wife in all property acquired during the time that Chapter 62 of the laws of 1901 was in force in New Mexico by onerous title of either hus-

band or wife, were vested rights, and likewise all property acquired under the community law in force at this time in New Mexico are vested rights and cannot be forfeited under any laws made or recognized by the State of New Mexico.

Ballinger on Community Property, Sec. 78; Spreckles v. Spreckles, 48 Pac. 231; Revised Statutes 1915, Sec. 1838.

A judgment or decree based upon a complaint that does not contain allegations of fact sufficient to constitute a cause of action in a default case or in a case where there was no adversary trial, is void for the reason that the court had no jurisdiction to enter such judgment or decree.

Oliver v. Enriquez, 124 Pac. 798; Reynolds v. Stockton, (140 U. S. 254; 35 L. ed. 464;) Munday v. Vail, 34 N. J. Law, 418; Dame v. Chochita, 13 N. M. 10; Black on Judgment, Sec. 183-171-218; Drug Co. v. Myers, 140 S. W. 463; Knowles v. Cannough, 170 N. W. 1073; Lagrange v. Davidson, 68 N. W. 426; Consolidated etc. Co. v. Trust Co., 24 Atl. 229; 23 Cyc. 913-929; Freeman on Judgments, Sec. 120; Seamster v. Blackstock, 83 Va. 232; U. S. v. Walker, 109 U. S. 58.

Where it appears from the allegations of a complaint in a divorce case that a property settlement has been made out of court, any judgment or decree attempting to settle the interests of the parties or adjudicate the property rights is void.

McKay on Community Property, Sec. 419.

In a suit where the unsuccessful party has been prevented from exhibiting his case fully by fraud or deception or any other means practiced on him by his opponent, a direct action may be brought to set aside and cancel a judgment or decree entered therein.

U. S. v. Throckmorton, 98 U. S. 61; Black on Judgment, Sec. 356-321; Phillips v. Negley, (117 U. S. 665; 29 L. ed. 1013); Freeman v. Freeman, 153 N. Y. 309.

In a case where there was no adversary trial and a decree was obtained by perjury on the part of the successful party, it will be set aside and cancelled at the suit of the person so injured.

U. S. v. Throckmorton, 98 U. S. 61; Secord v. Powers, (61 Nebr., 615, 85 N. W. 846); Barr v. Post, (59 Nebr., 361, 80 N. W. 1341); Avocato v. Del'Ara, 84 S. W. 443; Camp v. Wood, 37 Atl., 747; Jordon v. Volcanning, 72 N. J. 300; U. S. v. Minor, (114 U. S. 233; 29 L. Ed. 110); Marshall v. Holmes, (141 U. S. 589, 35 L. Ed. 870); 2 Pom. Eq. Jur., Sec. 919; Wickersham v. Comerford, 31 Pac. 358; Dunlay v. Steer, 26 Pac. 563; Steele v. Smelting Co., (106 U. S. 447, 27 L. Ed. 236); Vance v. Burbank, (101 U. S. 514, 25 L. Ed. 929); 1 Black on Judgments, Sec. 323.

Prayer for relief is no part of a complaint and unless there are allegations of fact sufficient to constitute a cause of action excluding the prayer for relief, no valid judgment can be based thereon in an *ex parte* proceedings.

Kingston v. Walter, 93 Pac. 700; Railway Co. v. Power Co., 113 Pac. 814; Dry Goods Co. v. Hill, (17 N. M. 347, 128 Pac. 62); Oliver v. Enriquez, 124 Pac. 798.

When the question of fraud is raised in a suit to cancel conveyance and transfers of property from wife to the husband, the burden is upon the husband to prove that such conveyance or transfer was *fair and free and voluntary* on her part and the *presumption is against its validity.*

21 Cyc. 1293-4; N. M. Statutes of 1915, Sec. 2750; 2

Pom. Eq. Jur. Sec. 955-951; Et. Seq.; Mathy v. Mathy, 113 S. W. 1012; Farmer v. Farmer, 39 N. J. Eq. 211; Boyd v. Montagrui, 73 N. Y. 498; Wood v. Wood, 172 S. W. 860; Southwark v. Southwark, 141 N. W. 624; Massey v. Rae, 121 N. W. 75; McCord v. Bright 87 N. W. 654; Stiles v. Breed, 130 N. W. 376; 4 R. C. L. 493; Egger v. Egger, 123 S. W. 928; 135 A. S. R. 466; Greene v. Greene, 47 A. S. R. 724; Witbeck v. Witbeck, 25 Mich, 439; Beel v. Campbell, 123 Mo. 1; Nelson v. Brown, 164 Ala. 398.

A contract obtained under circumstances which deprives the maker of the free exercise of his will by improper external pressure or influence or intimidation to such an extent as to induce such person to make such contract contrary to his will and inclination, is subject to be cancelled at the suit of such injured party.

14 Cyc. 1123; 2 Pom. Eq. Jur., Sec. 950; 4 R. C. L. 493; and cases cited.

It is only necessary for that degree of intimidation or compulsion to be used which is sufficient to and actually does overcome the mind and will of the persons acted upon to render a contract made under such circumstances voidable at the suit of the injured party.

4 R. C. L. 493-502; Earle v. Norfolk, etc. Co., 36 N. J. Eq. 192; McKinney v. Pinchard, 21 A. D. 601.

Assent must not only be mutual but it must be freely and voluntarily given in order to create a valid contract.

Story on Contracts, 313-321.

The presumption arises against the validity of a contract executed by a person that is mentally weak and the burden of proof rests upon the party claiming the benefit of such contract to show its perfect fairness and the capacity of the party to make it.

2 Pom. Eq. Jur., Sec. 947.

When a party to a contract is mentally weak though such weakness is not of itself sufficient to destroy capacity to contract, yet if it is accompanied by undue influence, *inadequacy of price,* ignorance *and want of advice;* contracts so made are *presumptively fraudulent* and will be cancelled at the suit of the injured party.

2 Pom. Eq. Jur., 947, note 3d; Allore v. Jewell, (94 U. S. 506, 24 L. ed. 260) ; 2 Roses notes, Harding v. Handy, Page 285; Harding v. Handy, (24 U. S. 103, 6 L. ed. 429, 11 Wheaton 125) ; Hutchison v. Bibb, 142 Ala. 586; 4 R. C. L. 502; Black on Recission and Cancellation, Sec. 173; Wray v. Wray, 32 Ind. 126; Ashmead v. Reynolds, 134 Ind. 139; Note to Gant v. Hunsucker, 55 A. D. 411; McArthur v. Johnson, 93 A. D. 596; Sprinkle v. Welborn, 51 S. E. 670.

Generally mere inadequacy of consideration not combined wth other circumstances of fraud, does not afford sufficient grounds for rescission of a contract or cancellation of written instruments; but when the inadequacy of consideration is so gross as to shock the conscience, a court or equity will interfere, if there are slight circumtances of unfair advantage, such as confidential relations, mental weakness, distress of mind, lack of legal advice, etc.

1 Elliott on Contract, Sec. 158-159 and authorities cited; 4 R. C. L. 501-502, and cases cited; Black on Rescission and Cancellation, 265-171; Esham v. Lamar, 10 B. Mon. (Ky.) 43; Graffan v. Burgess, 117 U. S. 180; Horse Springs Cattle Co. v. Scofield, 49 Pac. 956; 9 Cyc. 456.

Where inadequacy of consideration is so gross as to shock the conscience and moral sense and convince the judgment that some undue advantage was taken, it may be taken in itself as conclusive proof of fraud.

Black on Rescission and Cancellation, Sec. 175; Ballentine v. Smith, 205 U. S. 285; Roux v. Routhchild, 79 N. Y. Supp. 1145; Henderson v. Sublett, 21 Ala. 626; Stephens v. Osbourne, 64 S. W. 902; Turner's Trustee v. Washburn, 80 S. W. 460; Johnson v. Woodworth, 119 N. Y. Supp. 146; Suttles v. Hay, 6 Ire. Eq. 124; Futrill v. Futrill, 5 Jones Eq. 61; Dorsett v. Mfg. Co., 131 N. C. 260; Cofer v. Moore, 87 Ala. 707; Potter v. Everett, 32 N. C. 153; Huff's Adm. v. Hunt, 20 Ohio 497; Witherwax v. Riddle, 121 Ill. 140; Hannibal, etc. Ry. Co. v. Brown, 43 Mo. 294.

REID, HERVEY & IDEN, of Albuquerque and Roswell, for appellee.

Under the laws of Spain and Mexico, as is well known, the wife forefeited her matrimonial gains by the commission of adultery.

Schmidt Civil Law of Spain and Mexico, Chap. 4, Sec. 4, Art. 67; Barnett v. Barnett, 9 N. M. p. 205; McKay on Community Property, Sec. 425; Garrozi v. Dastas, 27 Sup. Ct. Rep. p. 224, 204 U. S. 64, 51 Law Ed. 369.

The laws of Spain and Mexico as the same existed at the time this territory was ceded to the United States have been repeatedly held by the courts of this state to be still in force relative to domestic relations and particularly martial relations and property rights of husband and wife in all cases where the same are not nullified or set aside by subsequent statutory enactments and are not contrary to the constitution and laws of the United States.

Barnett v. Barnett, Supra; Reade v. De Lea, 14 N. M. 442, 95 Pac. 131; Garrozi v. Dastas, Supra.

Under laws of New Mexico, neither husband nor wife, upon separation, are entitled to any particular portion of community property.

Sec. 2778, Code 1915; Hodge v. Hodge, 159 Pac. 1607; Miller v. Miller, 80 Pac. 816; 2 Nelson on Div. & Sep., Sec. 965.

As to inadequacy of consideration, see

Frazier v. Bank, 137, Pac. 592.

Wife may convey both her separate and community property to husband.

Sec. 2750, Code 1915; Duncan v. Brown, 18 N. M. 585.

## APPELLANT'S REPLY BRIEF.

Upon the granting of a divorce the former spouses become the owners of the community property as tenants in common unless a division is made in the divorce suit.

Biggi v. Biggi, 98 Calif., 35; 35 A. S. R. 141; De Godey v. DeGodey, 39 Pac. 157; Weiss v. Bethel, 8 Ore. 522; McLeran v. Venton, 31 Calif. 29.

Spanish-Mexican law on adultery was repealed by act of 1901 for it was a complete expression of the Legislature on the subject of martial rights.

36 Cyc. 1101; Arnett v. Reade, 220 U. S. 311; Routh v. Routh, 57 Texas 589; 36 Cyc. 1101; Bukner v. Boifeullet, 100 Ga. 743; Cochran v. King, 141 Pac. 922; California v. Conkling, 19 Calif. 501.

The act of 1907 did not revive the Spanish-Mexican law if that law was repealed by the act of 1901; because the act of 1907 when taken together with the unrepealed portions of the Act of 1901 was a comprehensive scheme of legislation, undertaking to deal with the whole subject of martial rights and especially provided ''the property rights of husband and wife are governed by this act unless there is a marriage settlement containing

stipulations contrary thereto'' (Sec. 21) and is a complete expression of the law making power on the subject.

36 Cyc. 1101; Butner v. Boifeullet, 100 Ga. 743; Cochrane v. King, 41 Pac. 922; Moody v. Seaman, 46 Mich. 74; People v. Assessors, 8 Abb. Proc. W. S. (N. Y.) 150; Roach v. Roach, 57 Texas 589; Arnett v. Reade, 220 U. S. 311.

The common law having been adopted in this State, the repeal of a statute revives the common law on the subject if it is a case where there is a revival of any law.

8 Cyc. 377 C.; Routh v. Routh, 57 Texas 589; Garrozi v. Dastas, 204 U. S. 64; Byrne v. Byrne, 3 Tex, 336.

## STATEMENT OF FACTS.

Appellant and appellee were married in the State of Texas in December, 1894, and came to New Mexico in the fall of the year 1900, and brought with them a small number of cattle and horses, some of which were the separate property of appellant, and the remainder community property. But there was such intermingling of the separate and community property that probably in law it all became the property of the community. The parties established a ranch in Eddy county, New Mexico, and engaged in stock raising, which proved very profitable. On May 28th, 1915, they owned real estate and personal property of the value of $150,000.00 more or less, subject to certain indebtedness then owing. Four children had been born to them, all boys, being of the ages of fifteen, sixteen, eighteen and twenty. On that day, John W. Armstrong, an attorney practicing at Carlsbad, New Mexico, and acting as attorney for the appellee, telephoned to the appellant that he desired to consult with her relative in the division of the property between herself and her husband and that she could come to his office or he would come to her home. The appellant stated that she would go to his office. On

the following day, May 29th, 1915, the appellant did go to the office of said Armstrong. Prior to this date appellee had employed said Armstrong as his attorney to sue for a divorce upon the ground of adultery and had authorized him to effect a property settlement with the appellant if possible, and had also authorized C. N. Richards, his banker, to pay such money as the attorney might order when a settlement was reached, which was to be the sum of $5,000.00 as found by the court.

When the appellant appeared at the office of the attorney, Richards was called by telephone and the three retired into the private office of the attorney, and said attorney told the appellant in substance that her husband had discovered that she had been untrue to him and was going to sue for divorce upon the ground of adultery and for a division of the property, and that he would settle the property interest with her and pay her $4,000.00. The wife stated that it was just as she expected and that if it suited Paul it suited her, but that she would require in addition to the money settlement certain household furniture. The attorney mentioned had prepared, prior to the appellant's arrival, a contract, settling such property rights, bill of sale for personal property, and deeds for the real estate, and upon her arrival the papers were delivered to her for examination. She was told what they were, she read them over, and the papers were changed after her examination, to insert the household furniture above mentioned, as required by her, and the consideration agreed upon was inserted. She then signed the said contract, deeds and bills of sale, and delivered them to Armstrong, receiving a check for $4,000.00. There was certain Oklahoma property for which deed had not been prepared because the description was not at hand, and the appellant agreed to return the next day and sign the quit-claim deed to the property. Mr. Richards then retired and the attorney announced to the appellant that he would immediately prepare a suit for divorce and file the same and serve her with a copy of the summons and complaint.

The wife appeared anxious to have the divorce speedily granted. She returned the following day to sign the deed to the Oklahoma property and at that time was served with a copy of the complaint and summons, and she asked the attorney if he could prepare her answer and he stated that he could do it, but would prefer that she get another attorney, but if she preferred to she could prepare it herself. She then asked Mr. Armstrong to prepare the answer and he dictated it to his stenographer in her presence after she had told him that she wanted Paul to have the divorce and did not care to resist it. She then signed and swore to the same and delivered it to Mr. Armstrong with instructions to file it.

The attorney and the appellee appeared before the judge of the district court on the 31st day of May, 1915, and presented the complaint and answer and gave testimony to sustain the allegations of the complaint. The appellant knew when the matter would be taken up because the attorney advised her at the time of his departure for Roswell to present the case. The court took the matter under advisement and about a month later rendered a final decree, giving the appellee an absolute divorce on the ground of adultery committed with one Orville Beal, the present husband of the appellant, during the month of December, 1914, and at various times afterwards; giving the custody of the children to the appellee, and, it is claimed by appellee, confirmed the settlement theretofore entered into between the parties relative to the property.

At the time the appellant signed the deeds and contract transferring all her interest in the separate estate and community property to her husband in the law office of Mr. Armstrong, she had no independent legal advice, the value and extent of the property was not disclosed to her, nor was she advised that under the law, upon divorce and division of the property, that she was entitled to a half interest in the property, subject to such

deductions and provisions as the court might decree for the education and support of the children.

Shortly after the decree was entered appellant intermarried with Orville Beal and between the time of such marriage and the institution of the suit herein, she became insane, and the present action was instituted by J. D. Walker, her committee.

The present action was filed on the 2nd day of March, 1916, and issue was joined on the third amended complaint filed on the 9th day of November, 1916. The complaint set up a history of all the transactions heretofore related and alleged that the community property and separate estate of appellant (and it may be stated that at the time of the settlement appellant did own certain separate personal property) was of the value of more than $150,000.00; that appellant was entitled to a half interest therein; that she was induced to sign the contract and deeds mentioned by fraud, duress and intimidation of her husband, exercised through his agents; that she had no independent legal advice; did not know her rights under the law; did not know the extent and value of the property, and that the consideration paid therefore by her husband was wholly inadequate and unfair and a fraud upon her rights. It was further alleged that the district court acquired no jurisdiction over the property of the respective parties in the divorce proceedings, because such question was not put in issue, and that the allegations of the complaint relative to the same were not sufficient to invoke the jurisdiction of the court, and for that reason the decree attempted to confirm the property settlement and to quiet title to the appellant in and to the property was void. The prayer of the complaint was that the deeds and contracts be set aside and also the judgment of the court in the divorce procedings in so far as it attempted to adjudicate the property rights of the parties and that appellant be declared to be the owner of the undivided half interest in and to all such community property and the absolute owner of her separate property at

the time of the making of the contracts, and that the same be divided under orders of the court. A copy of the pleadings and proceedings in the divorce suit and of the several contracts were attached to the complaint as exhibits. The only allegation in the divorce complaint relative to the property interest of the parties was as follows:

"That by deeds, bills of sale and other agreements, dated and executed by defendant May 28th, 1915, said defendant conveyed to plaintiff, for a valuable and adequate consideration all of her right, title, and interest, including community and separate estate, in and to the following described real estate and personal property in Eddy County, New Mexico, and in Grady and Murray Counties, Oklahoma, to-wit:—

(Here follows a description of the real estate owned by the parties and of the personal property.)

The complaint then proceeds:

"And that defendant's rights to alimony, maintenance, support or any allowance, of whatsoever kind or character, present or prospective were, on said May 25, 1915, fully and completely adjusted for a valuable and adequate consideration."

The prayer of the complaint was for a dissolution of the bonds of matrimony, that appellee have the care and custody, maintenance and education of the children:

"That the property and estate hereinbefore described as such, be decreed to plaintiff; that defendant and those claiming by and through her be divested of all her right, title and interest of whatsoever kind or character in and to said property; that defendant and persons claiming or to claim by and through her be barred and forever estopped from having or claiming any right, title or interest in or to said property and premises adverse to plaintiff; that said plaintiff's right and title thereto be forever quieted and set at rest as against said defendant and all those claiming or to claim by or through her; and that said plaintiff have such other and further relief as to the court may seem meet and proper."

The so-styled answer of the appellant in that case, prepared by Mr. Armstrong, was as follows:

"Defendant, Trannie L. Ares, for her answer herein states: 1. That she has been served with a true copy of the Complaint and Summons in the foregoing styled and entitled cause; that she has read and fully understands the allegations and contents of said summons and complaint; that she makes

and files this answer with full knowledge of the effect thereof and for the purpose of giving the court full and complete jurisdiction to hear the evidence and render judgment thereon without delay; that she hereby consents that said court may hear the evidence and render judgment herein without further notice to her and that said action or any other necessary action herein may be taken this day or at any other day which may be convenient to the court, without her presence; and that she hereby expressly waives any right or privilege of being present at taking of any testimony herein or service with any further process, motion or any other proceeding herein.

"Wherefore, defendant prays the court only that plaintiff be required to pay the costs herein."

The decree in the divorce suit set over to the appellee all the property mentioned and attempted to quiet appellee's title thereto as against the appellant.

Issue was joined in the present case by an answer and the reply thereto, but it is unnecessary to go further into the pleadings. The case was tried to the court. Certain requested findings were asked by appellant, which were refused by the court, as were conclusions of law based upon such requested findings. The court made certain findings of fact and stated conclusions of law thereon and found that the husband had authorized his attorney to pay the appellant $5,000 in settlement of their property rights and as but $4,000 had been paid, entered judgment for appellant against appellee for $1,000. To review such judgment this appeal is prosecuted.

### OPINION OF THE COURT.

ROBERTS, J. (After stating the facts as above). There is but little, if any, dispute between the parties as to the facts. Some difference does exist as to the value of the community property at the time of the alleged settlement. Appellee put in no evidence as to the value of the property and the dispute arises as to conflicting estimates and values fixed by appellant's witnesses. The court refused to order a count made of the cattle and horses on the theory that the value of the property was immaterial. That the community property, real and personal, was worth between $100,-000.00 and $200,00.00 for which certain indebtedness

amounting to from $15,000 to $35,000, should be deducted, we think is fairly inferable from the evidence. Appellee argues here, as it was his insistence in the court below, that the value of the property is of no moment and does not affect the ultimate determination of the case.

·[**1,2**]   The appellee seemingly places no reliance upon the judgment of the court in the divorce proceedings which attempted to confirm the property settlement and to quiet appellee's title to the real estate and property in question.   This phase of the matter may be dismissed from consideration with the observation that the complaint in the divorce suit did not invoke the jurisdiction of the court as to the property rights of the parties, hence the decree entered would not, in that regard, conclude the appellant.   The complaint as shown, stated that the parties had by contract settled the property rights and no facts were stated invoking the jurisdiction of the court as to the property.   We have in the statement of facts set forth the allegation in the complaint in the divorce suit relative to the property rights of the parties.   It has been held by both this court and the territorial supreme court that the prayer for relief is not a part of the complaint and cannot be considered as adding to the allegations. Dry Goods Co. v. Hill, 17 N. M. 347, 128 Pac. 62; Kingston v. Walter, 14 N. M. 368, 93 Pac. 700; Railway Co. v. Power Co., 16 N. M. 163, 113 Pac. 813; Pomroy's Code Remedies, (4th Ed.) sec. 471, 31 Cyc. 110.   The allegation of the complaint in the divorce suit is that the defendant had purchased from the plaintiff her interest, both separate and community in a certain described property.   Taking this allegation to mean all it says, there is no issue tendered.   It does not allege that the parties ever owned said property, or in fact that either of them had any interest therein. It does not appear that said property was either community or otherwise, but merely the plaintiff's in-

terest, what ever that interest might be, had been pur-
chased by the appellee. No allegation was made that
appellant was asserting any adverse claim to the
property. A decree or judgment in a case which is
outside the issue tendered by the complaint is invalid
and will be treated as a nullity, even in a collateral
proceeding, where the question adjudicated was not
litigated in an adversary proceeding. Oliver v. En-
requez, 16 N. M. 322, 124 Pac. 798; Reynolds v. Stock-
ton, 140 U. S. 254. In McKay, on Community Prop-
erty, sec. 419, the author says:

"Where this allegation is admitted, all consideration of the
question is, by the voluntary act of the parties withdrawn
from the court, and while there is no authority directly in
point, it is the author's judgment that the decree is not res
judicata except as to the fact of an agreement; as to whether
it has or has not been performed; whether it was or was not
o'tained by actual or constructive fraud or other wrongful
ir eans, it is not res judicata, and if the contract be not per-
f rmed it may be enforced, and if obtained by fraud, or
' iress, it may be set aside."

[3] Further discussion of this question, however, is
unnecessary, because as we have stated, appellee does
not reply upon the judgment in the divorce decree to
support the judgment of the court in the present
action. He relies upon two propositions, which will
now be considered.

First: That under the Spanish-Mexican law, which
he contends was in force in this state on May 28th,
1915, the wife forfeits her interest in the community
property by the commission of adultery; and, second-
ly, that on May 28th, 1915, at the time this contract
was made, neither the husband nor wife had any abso-
lute right in any particular portion of the community
property upon separation and that said property was
subject to the disposition of the court in the exercise
of a sound discretion, based upon all circumstances of
the case, such as situation of the parties, the extent
and value of their property, the party at fault, and
the extent and nature of the fault, the number, ages

and situation of the children, and which party would have the custody of them, and many other things that might arise. It is his position that if he is correct upon either proposition above stated then it must necessarily follow that there can be no such thing as fraud, presumed from inadequate consideration, as insisted by the appellant, for he contends there can be no inadequate consideration paid for something which has no definite fixed value, or which cannot be reduced to any definite fixed value. These questions will be considered in the order stated.

1. Under the law in force in this jurisdiction in 1915, did the wife forfeit her interest in the community property by the commission of adultery?

That no statute existed in this state providing such forfeiture is conceded by appellee, but he takes the position that the laws of Spain and Mexico, as the same existed at the time this territory was ceded to the United States, are still in force here relative to domestic relations and property rights of husband and wife in all cases where the same are not nullified or set aside by subsequent statutory enactments and are not contrary to the constitution and laws of the United States, and that under such law the wife forfeits her matrimonial gains by the commission of adultery.

Under the Civil Law of Spain and Mexico the wife forfeits her matrimonial gains in the following cases:

1. When she has been guilty of adultery.

2. When she has abandoned her husband without his consent.

3. When she has joined some religious sect, and therein married, or committed adultery.

Schmidt's Law of Spain and Mexico, section 68.

Under this law the widow likewise forfeited her por-
tion of the matrimonial gains by leading a dissolute
life.  Schmidt's Law of Spain and Mexico, section 69.

[**4,7**]  So the question really resolves itself into a
determination of the single·question as to whether this
law is operative in this jurisdiction.

That there is strong support for the contention by
appellee that this law affords the rule of decision in
this jurisdiction must be conceded, for it was so de-
cided by the territorial supreme court in the case of
Barnett v. Barnett, 9 N. M. 205, 50 Pac. 337, and was
so stated in the majority opinion in the case of Read
v. DeLea, 14 N. M. 442, 95 Pac. 131, and there are
other opinions by that court which either directly or
·impliedly so hold.

In the Barnett case the husband had procured a
divorce from the wife on the ground of adultery, and
no disposition was made of the community property
in the decree.   Thereafter the divorced wife instituted
suit for the division of the community property.   Her
right to a division was denied upon two grounds:
First, that a wife had no vested or fixed interest in
the property of the community during marriage, but
only an expectancy, and the rule of the common law
was applied, under which it was held that a divorce a
vinculo matrimonii absolutely dissolves all marriage
ties, and destroys the relation of husband and wife.
The court said:

"After the date of the decree the man has no wife, the
woman no husband.   The woman is feme sole.   A decree
which dissolves the marriage absolutely, and destroys the
marriage status, puts an end to all rights dependent upon
coverture.   After such a decree, the court has no jurisdic-
tion over the parties, and the suit is no longer pending.   When
the court has entered the final decree, it has no further
jurisdiction over the subject matter, and cannot reassume it."

From the above it will be observed that the court
applied to a statutory absolute divorce, a common law

rule, which applied upon annulment of the marriage, for such was the effect of a divorce a vinculo matrimonii. Hodges v. Hodges, 22 N. M. 192, 159 Pac. 1007.

Second, that the Civil Law of Spain and Mexico was in force here as no "statute of the Territory—either that adopting the common law as the rule of practice and decision, or that relative to the estates of deceased persons, or any other enactment—ascertains the rights of husband and wife after legitimate separation, and during the lives of both, to the property of which they became possessed during coverture." The court further said:

"That any change of the Spanish law as to the acquest property under the foregoing status has been made can not be seriously pretended; and that the foregoing authorities decisively establish that, in such contingency, the law upon the subject in operation at the date of the cession of the territory must prevail, should be unhesitatingly admitted." 9. N. M. 213.

In the case of Reade v. DeLea, supra, the court said:

"This court has in a number of cases dealt with questions of property rights between husband and wife and has uniformly recognized the civil law, in the absence of specific statute, as controlling. A brief review of former decisions of this court upon this point will demonstrate this."

This case involved the right of husband to convey community property, acquired prior to the act of 1901 (Chap. 62) without his wife joining in the deed, the act of 1901 requiring the wife to join. The case was reversed by the supreme court of the United States, but the applicability of the civil law was not discussed.

Chaves v. McKnight, 1 N. M. 148, and Martinez v. Lucero, 1 N. M. 208, both held the civil law to be in force here, but these decisions were both rendered prior to the adoption of the common law, and therefore were correct.

In Strong v. Eakin, 11 N. M. 107, 66 Pac. 539, the Spanish law as to community or acquest property was again held to be in force in so far as not abrogated by statute.  Other cases cited in the case of Reade v. DeLea as offering support for the contention are: Ilfeld v. Baca, 14 N. M. 65, 89 Pac. 244; In re Meyer 14 N. M. 45, 89 Pac. 244; Laird v. Upton, 8 N. M. 409, 45 Pac. 1010; Crary v. Field, 9 N. M. 222, 50 Pac. 342; Neher v. Armijo, 9 N. M. 325, 54 Pac. 326; and Gillett v. Warren, 10 N. M. 523, 62 Pac. 975.  But the only cases directly and explicitly so holding are Barnett v. Barnett, supra, Strong v. Eakin and Reade v. DeLea.

It will be observed that the holding, that the civil law applied here, in the absence of a specific statute, as to property rights of husband and wife, was built up from the Barnett case, and that case really only went to the extent of saying that where a causes omissus eventuated, under the statute and the common law, the court would look to the civil law for the rule of decision.   In other words, because of such omission, the civil law had never been repealed, thus implying that it could only have application in such event.   In the later cases the court did not discuss the question or give any reason for the conclusion that the civil law applied as to property rights, simply stating that such was the case.

In the Barnett case various statutes are set forth and discussed, upon which the conclusion arrived at was based.  Without further discussion of that case we will set forth the various statutes, there discussed, and ascertain whether we should still give adherence to the view there expressed.

Prefatory to a consideration of the various statutes it should be stated that as New Mexico was acquired by conquest from the Republic of Mexico, its laws as to rights—not political in character—of its people were acquired with it, and remained in force until

substituted by action of the new sovereignty. This question was fully discussed in the Barnett case and the law was correctly stated. Thus at the time of the acquisition of New Mexico the civil law of Mexico undoubtedly governed property rights between husband and wife, and such law would still be the rule of decision, absent legislation to the contrary.

In 1846, the following announcements were promulgated by Kearney in his Code: Kearney's Code, p. 82, Sec. 1 (September 22, 1846):

"All laws heretofore in force in this territory, which are not repugnant to or inconsistent with the constitution of the United States, and the laws thereof, or the statute laws in force for the time being, shall be the rule of action and decision in this territory."

Kearney's Code, Pamph., p. 35, Sec. 1, (September 22, 1846). Barnett v. Barnett, 9 N. M. 209, 50 Pac. 337.

This was so without the decree, hence no added force can be ascribed to the former laws by reason of the promulgation. We next find that General Kearney further provided in his code, (Pamph., p. 35, Sec. 1, September 22, 1846):

"The laws heretofore in force concerning descents, distributions, wills and testaments, as contained in the treatises on these subjects written by Pedro Murillo de Lorde (Velarde), shall remain in force so far as they are in conformity with the constitution of the United States 'and the state laws in force for the time being."

This section of Kearney's Code was incorporated into the Revised Statutes of 1865 as section 1 of Chapter 2 and was carried forward into the Compilation of 1884 as section 1365.

By act of July 14, 1851, Laws 1851, section 6, p. 176, it was provided:

"That all laws that have previously been in force in this territory that are not repugnant to, or inconsistent with the constitution of the United States, the organic law of this ter-

ritory, or any act passed at the present session of the legislative assembly, shall be and continue in force, excepting in Kearney's Code the law concerning registers of land."

This section of course was without effect, as such laws would automatically and without legislative action, so continue, in force and effect.

Chapter V. R. S. 1865, provided for a distribution of the inheritance, but of course did not repeal the provisions of the treatise on such subjects written by Pedro Murillo Velarde, except where there was a conflict or unless it purported to cover the whole field.

On January 7th, 1876, the legislature provided (Laws 1876, chapter 2, section 2):

"In all the courts in this territory the common law recognized in the United States of America shall be the rule of practice and decision."

This section will be later discussed and is set out here simply to show the sequence of legislation.

In 1887 (Laws 1887, chapter 32) the legislature adopted an act regulating descents and apportionment of estates, which was clearly patterned after the common law, and evidenced an intention on the part of the legislature to supplant the civil law on the subject. Whether it operated as a repeal of the theretofore recognized law on the subject of community and acquest property, is wholly immaterial. In 1889 (Chap. 90, Laws 1889) the legislature enacted a new statute on the subject, under which the territory went back to the community property system, specifically repealed chapter 32, Laws 1887. In 1891, by chapter 68, section 1, the legislature specifically repealed section 1365, C. L. 1884, which was the section originally promulgated by Kearney, declaring the law on the subject of "Descents, distribution, wills and testaments as contained in the treatise on these subjects written by Pedro Murillo de Lorde (Valarde) shall remain in force" etc.

Whatever may have been the effect of this statute from the time of its promulgation by General Kearney and its incorporation into the Revision of 1865 until its specific repeal in 1891, certainly, after its specific repeal, its force was spent, and from thence forward can be safely laid aside.

Thus we are brought to a consideration of the state of the law from 1891 to the date of the institution of the present suit. And we must necessarily determine, absent a statute providing for a forfeiture of the wife's interest in the community property, by reason of the commission of adultery, whether we should look to the civil law and finding there such a provision or rule, give it application here.

The act of 1876, adopting the common law, has been frequently construed by the territorial and state supreme courts. First, in the case of Browning v. Estate of Browning, 3 N. M. 659, 9 Pac. 677, in which the court said:

"We are, therefore, of opinion that the legislature intended by the language used in that section to adopt the common law, or lex non scripta, and such British statutes of a general nature not local to that kingdom, nor in conflict with the constitution or laws of the United States, nor of this territory which are applicable to our conditions and circumstances, and which were in force at the time of our separation from the mother country."

See also Territory v. Ashenfelter, 4 N. M. 93, 12 Pac. 879; Dye v. Crary, 12 N. M. 160, 78 Pac. 533; Sandoval v. Albright, 14 N. M. 345, 93 Pac. 717; Ex Parte De Vore, 18 N. M. 246, 136 Pac. 47; and State v. Armijo, 18 N. M. 646, 140 Pac. 1123. In the last case it was said:

"Since the adoption of the common law in New Mexico, it is as much the rule of decision in this state, as in those states in which it was the law from the beginning of their political existence."

And the same doctrine is announced by the Texas Supreme Court in the case of Swayne v. Lone Acre Oil

Co., 98 Tex. 597, in which state the civil law prevailed prior to the adoption of the common law. The same is true in California, yet the Supreme Court of that state said, in the case of Luz v. Haggin, 69 Cal. 255 (Opinion page 384):

"Whatever the law pre-existing the statute of 1850, it was then and there done away with, except as it agreed with the common law. The matter was settled if the law makers had power to settle it."

Of course the court was referring to the civil law and not to statutory enactments.

Prior to 1876, the civil law, as we have said, was the fundamental law in this jurisdiction. In all the other states of the Union, with the exception of Louisiana which still retained portions of the civil law, the common law of England was the rule of decision; was the fundamental law. The Legislature of New Mexico, evidently desired to harmonize its fundamental law with the jurisprudence of the other states, with which it was thereafter to be indissolubly associated, hence it adopted the same basic law. The effect of the act of adoption may be well described by the application of the language of the California Supreme Court in the case of Luz v. Haggin, supra:

"The act of 1850 in adopting the common law of England designates the common law as interpreted, as well in the English courts as in the states of the Union that have adopted the English common law and does not designate the civil law, nor the jus coemune antiquum, or Roman 'law of nature' of some of the civil law commentators, nor the Mexican law, nor any hybrid system."

The civil law of Spain and Mexico was derived chiefly from the Roman law and defined rights and wrongs of every description and the remedies for public and private redress. All students of the law are familiar with the source of the common law, which likewise gives rights and designates wrongs of every description and provides remedies for public and private redress. Under either system, if a right did not exist by virtue of such law,

there was no right, and for every right there was a remedy. In Lewis' Sutherland Statutory Construction, section 453, the author says:

"Statutes are but a small part of our jurisprudence. The principles of the common law pervade and permeate everything which is subject to legal regulation. Such law defines rights and wrongs of every description and the remedies for public and private redress. By its principles statutes are read and construed. They supplement or change it, and it adjusts itself to the modification and operates in conjunction and harmony with them. If words from its vocabulary are employed in them it expounds them. If the statutes are in derogation of it, it yields and bides its time; if they are cumulative, it still continues. Rules of interpretation and construction are derived from the common law, and since that law constitutes the foundation and primarily the body and soul of our jurisprudence, every statutory enactment is construed by its light and with reference to its cognate principles."

·When the legislature in 1876 adopted the common law as the rule of practice and decision, the whole body of that law as limited in the case of Browning v. Estate of Browing, supra, came into this jurisdiction. Where it found·a statute counter to its provisions, it yielded to the statute, but it gave way only in so far as the statute conflicted with its principles. In so far as was possible it operated in conjunction and harmony with the statutes. If the statute conflicted with it, it bided its time and upon repeal of the statute became again operative. In other words, the common law, upon its adoption, came in and filled every crevice, nook and corner in our jurisprudence where it had not been stayed or supplanted by statutory enactment, in so far as it was applicable to our conditions and circumstances.

Where a statute existed at that time, patterned after the civil law, or copied from some other state or country and it conflicted with the common law, such common law occupied all the field of jurisprudence not actually covered by the statute, and, upon repeal of such statute, the common law immediately took possession and resumed its sway over the rights and remedies theretofore regulated by such statute. Simply because the statute

was copied from the civil law, or the law of some other state or country, by its repeal the law of such state or country did not continue, nor did such repeal revive the fundamental law upon the subject in existence at the time the common law was adopted.

Assuming, for the sake of argument, that the law upon the subject of descents, distributions, wills and testaments, as contained in the treatise on such subjects written by Velarde continued in full force and effect until 1891, by virtue of section 1365, C. L. 1884, carried forward as heretofore shown, certainly by the specific repeal of this section by the legislature in 1891, the common law thereafter became the rule of decision, except where statutory provisions changed the law.

Hence we must examine the statutory law on the question here under consideration in order that we may determine the extent of the departure from the common law.

First, under chapter 33, Laws 1887, (C. L. 1897, section 1431) the district courts were authorized to grant absolute divorces upon five distinct grounds, each cause occurring after marriage. The section referred to, while not aptly worded, uniformly received this interpretation by the courts of the territory. This power conferred was of course a departure from both the common law and the civil law, assuming that the ecclesiastical law was a part of the common law. Under neither the civil nor common law was there such a thing as an absolute divorce for causes occurring after marriage. The statute in question was silent as to the disposition or status of the property owned by the communty at the time of the dissolution of the bonds of matrimony.

Second. Section 21, chapter 90, Laws 1889, an act to amend the law relative to the estates of deceased persons, provided for the distributon of the estate of deceased persons, together with other sections of said act.

This act was modeled after the civil law of Spain and Mexico, and necessarily we would look to that law for definitions and interpretations, just as we would look to the decisions of the courts of a sister state for the construction and interpretation of statutes taken from such state. But because the act was modeled after the Spanish-Mexican civil law would be no reason for the holding that the whole body of the civil law, upon the subject about which the legislature was enacting, was incorporated into our law, because the legislature saw proper to take parts of it and put it in statutory form. There would be just as much merit in the contention that where the legislature sees fit to copy from the statute of a sister state a certain provision, it thereby incorporated into our law all of the legislation of such state upon the subject.

In the case of Routh v. Routh, 57 Tex. 589, the court said:

"In adopting the community system, as it may be termed for convenience of expression, neither the civil law governing the subject of marriage, nor the entire system of acquests and gains, was made a part of our law. The enactments which regulate the subject in this state are specific and definite statutory rules, and the civil law is not incorporated with them, nor is it further accepted than as it may have been enacted in the statute. Therefore the qualifications and modifications of the operation of the community system in civil law states, as Louisiana, or in civil law countries, or those under civil law jurisdiction, as Spain, France, and Texas, as it once was, will not have application in determining how far marital rights to property claimed under a marriage which is governed by common law principles, will be affected by a second or putative marriage recognized as valid under the civil law."

In the case of Van Maren v. Johnson, 15 Cal. 308, in an opinion by Chief Justice Field the question arose as to the right of a creditor of the wife on a debt contracted prior to her marriage, to subject the community property to payment of such debt, in a suit against the husband and wife. The statute there provided that the separate property of the husband should not be liable for the debts of the wife contracted prior to her mar-

riage, but was silent as to the community property. The court after referring to the statute, and its silence upon the question stated, said:

"The objection must then be solved by considerations arising from the rule of the common law. That law constitutes the basis of our jurisprudence, and rights and liabilities must be determined in accordance with its principles, except so far as they are modified by statute."

California, at the time of the decision, had the community property system, copied of course from the civil law; the statute there being silent upon the right to subject community property to the payment of the wife's antenuptial debts. If the mere adoption by that state of a statute, copied from the civil law, carried with it all the incidents of such property, and rights and remedies known to the civil law, but not copied into the statute, then the court would have looked naturally to the civil law for the solution of the question and not to the common law. See also Sesler v. Montgomery, 78 Cal. 486.

With the repeal of section 1365, C. L. 1884, in 1891, assuming that it was the law until that date, the common law moved up against the statute of 1889, above referred to, and afforded the only rule of decision, and the only measure of rights, as to all matters and subjects not provided for by the act. Where it could do so, as stated above, it operated in harmony with the statute; where there was a conflict, the statute of course took precedence. Hence, property rights of husband and wife were regulated by the common law, except where, and in so far as such rights were changed by statute.

[8-11] The statute being silent upon the question of forfeiture of right by the wife in community property, we must therefore look to the common law and ascertain whether under that law, as here adopted, it can be said that the wife forfeited her interest in the community property by the commission of adultery.

By the common law, the wife's adultery was not a

bar to dower, nor was it cause for divorce from the bonds of matrimony. Lakin v. Lakin, 2 Allen 46. In 1285, by statute, (13 Edw. 1 St. 1 c. 34) it was provided:

"If a wife willingly leave her husband and go away and continue with her advouterer, she shall be barred forever of action to demand her dower that she ought to have of her husband's lands, if she be convicted thereupon, except that her husband willingly and without coercion of the church reconcile her, and suffer her to dwell with him, in which case she shall be restored to her action."

Dower, under the common law, was the portion of lands or tenements which the wife had for the term of her life of the lands or tenements of her husband after his decease for the sustenance of herself and the nurture and education of her children. 14 Cyc. 880. It was an inchoate right during coverture, vesting absolutely in the wife only upon the death of her husband. Nagle v. Tieperman, 74 Kan. 32. It was not an estate in land, vested or otherwise, but a mere expectancy or possibility incident to the marriage relation, contingent on the wife surviving the husband.

The wife's interest, during coverture, under our statutes, in the community property is quite different from her right of dower at common law. This was the effect of the holding of the supreme court of the United States in the case of Arnett (de Lea) v. Read, 220 U. S. 311. The courts of California and Louisiana deny to the wife any present interest in the community property, while the courts of Texas and Washington hold that she has present, vested right of property in the community. The statutes of each state differ more or less on the subject, and the decisions are influenced naturally by the terms of the statute. Hence, we are required to examine the statutes in force here at the time the rights of the parties hereto became fixed.

By chapter 62 Laws 1901, the legislature passed an act defining the property rights and powers of married persons, prescribing grounds for divorce and other matters. Under this act the rights of the spouses as to

community property were equal in every sense of the word. It did not even make the husband the manager of the community, being silent upon this question. Sections 23, 30 and 31 of the act read as follows:

"Sec. 23. Whenever the husband and wife shall have permanently separated and no longer live or cohabit together, as husband and wife, either may institute suit in the district court for a division of property, or for the disposition of the children, without asking for or obtaining in said suit a dissolution of the bonds of matrimony; or the wife may institute suit for alimony alone."

"Sec. 30. Upon division of property, from any cause whatever, the husband and wife, as between themselves, each shall be entitled to an undivided one-half interest in all that part of the other's separate estate which may have been acquired by such other during marriage by onerous title."

"Sec. 31. The failure to divide the property on divorce shall not affect the property rights of either the husband or wife; either may subsequently institute and prosecute a suit for division and distribution thereof, or with reference to any other matter pertaining thereto, which could have been litigated in the original suit for divorce."

In 1907 (chapter 37, Laws 1907) a new act was passed which repealed sections 1 to 9 and section 30 of the act of 1901. The act was largely taken from California and after defining what was community property, it provided by section 16 as follows:

"Power of Husband Over Community Property.—The husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has his separate estate; provided however, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto, and; Provided, also, That no sale, conveyance or incumbrance of the homestead, which is then and there being occupied and used as a home by the husband and wife, or which has been declared to be such by a written instrument signed and acknowledged by the husband and wife, and recorded in the county recorder's office of the county, and furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property shall be made without the written consent of the wife."

Section 26 reads as follows:

"Distribution of the Common Property on Death of Wife.—
Upon the death of the wife, the entire community property,
without administration, belongs to the surviving husband, ex-
cept such portion thereof as may have been set apart to her
by a judicial decree, for her support and maintenance, which
portion is subject to her testamentary disposition, and in the
absence of such disposition goes to her descendants, or heirs,
exclusive of her husband."

If these two sections stood alone, it might be that it
would be the duty of the court to give to the statute the
construction adoped by the California courts, but sec-
tions 23 and 31 of the Act of 1901, above quoted, were
not repealed and were carried forward into the Code of
1915 as sections 2774 and 2781, respectively. Section
2774 (section 23, Act 1901) clearly recognizes an exist-
ing, present interest in the wife during the existence of
the matrimonial status, for if she had no interest it
would have been folly for the legislature to give her the
right to maintain a suit for division of the community
property, upon separation, and without divorce. Section
2781, (section 31, Chapter 62, Laws 1901) recognizes
that this interest continues even after divorce, where
the property is not divided by the decree in the divorce
case. Now if she had no interest in the property during
the existence of the community but simply an expectancy
which would ripen into an interest only upon the death
of the husband, and which expectancy continued only
during the existence of the martial status, this expectant
interest would be cut off by the divorce decree. But the
statute says that failure to divide the property on divorce
shall not affect the property rights of either husband
or wife, and that either may thereafter institute suit for
division and distribution thereof, thus recognizing in
the wife an interest in the community property during
coverture, which survives dissolution of the bonds of
matrimony.

Whether section 30, chapter 62, Laws 1901, was re-
pealed because it used the terms "onerous title" and
"separate estate," which were not consistent with the

Act of 1907, or because the legislature took it for granted that each of the spouses was the owner of an equal interest, or for some other reason is wholly immaterial. The sections referred to clearly recognize a present interest in the wife, and the whole act shows that she was an equal partner with her husband in the matrimonial gains. He was constituted by section 16, chapter 37, Laws 1907, as the agent or manager of the. community property, but this did not vest him with a larger or superior interest in the property upon division. Kahny v. Dunbar, 21 Idaho, 258.

This then being the state of our law, and the wife's interest being altogether different from her right of dower at common law, the statute, 13 Edw. 1, cannot be held applicable here as divesting her of her interest in the property under our statutes. This is clearly shown by a reference to early decisions of some of the state courts where the question arose as to the applicability of this statute, where the wife was given an interest in property of the husband akin to dower rights under the common law. In the case of Lecompte v. Wash. et al, 9 Mo. 324, the court said:

"It is very evident from this glance at the legislation on this subject, that dower, as it was known and defined at the common law, never did exist in this territory. Previous to 1816 the statute laws of the territory had covered the subject and declared what dower was, and the dower so declared varied most essentially from that which existed at common law. The subject having already been disposed of and provided for, the introduction of the common law, and the British statutes passed in aid thereof, did not repeal or modify, or in any respect alter or affect the rights of persons as they were recognized by our territorial legislation. The enactments of .the territorial legislature, and the statute of Westminister II, are not consistent with each other; The enactments having declared who should be endowed, and how they should be endowed, and of what. The statute of 13 Ed. 1, creates a temporary bar to the dower, and makes certain acts on the part of the wife a forfeiture of her rights. Whether this statute amended or improved the common law, it at all events applied to a subject previously provided for by territorial legislation, and therefore did not become the law of this state until 1825, when the legislature expressly enacted it."

In the case of Smith v. Woodworth, 4 Dill. 584, Judge Dillion said:

"In respect to the second special defence to the action, I am of the opinion that the statute of Westminister 2, 13 Edw. 1, ch. 34, upon which that defense is based, and which is (statute quoted) never having been expressly adopted in Iowa, is not in force therein, nor is it a part of the law of the state. The ground of this conclusion is that its provisions are inconsistent with the legislation of the state on the subject of dower, or the widow's right in the estate of her husband, and the mode in which such right may be barred or relinquished, and with the statutory provisions in respect to divorce on the ground of adultery."

To the same affect see Littlefield v. Paul, 69 Me. 527; Lake v. Lake, 2 Allen 45; and Bryan v. Batcheller, 6 R. I. 542.

There being no applicable provisions of the common law, or any statute of this state barring the wife of her interest in the community property by reason of the commission of adultery, we conclude that her rights and interests in the community property are not affected by any wrongs which she may have committed, however grievous they may have been. As the legislature has not seen fit to deprive her of the interest which it conferred upon her, in the property earned by the parties to the union, because she may have violated her marital vows, the courts can not legislate upon the subject and by judicial fiat correct that which many think is a serious defect in our laws. The remedy is with the legislature and not the courts.

Having reached the conclusion that under the laws of this state the wife does not forfeit her interest in the community property by the commission of adultery, we are brought to a consideration of appellee's second proposition, viz: That neither husband nor wife, upon separation, is entitled to any particular portion of the community property, because under the statute the court is empowered, upon decreeing a divorce, to make disposition of the property belonging to the community and

of the property of the husband and wife in its sound discretion. From this premise it is argued that as neither husband nor wife, upon divorce, is entitled to any fixed interest in the community property, that there can be no question as to adequacy or inadequacy of consideration; that as it was within the power of the court in the exercise of a sound discretion to have divided the community property, as in its judgment equity and good conscience required, taking into consideration the party at fault, etc.; it follows that at the time the appellant transferred all of her interest in the community property for $4,000, as is shown by the record, she was not transferring any certain fixed interest but was simply in consideration of that amount waiving her right to have the court hear all the testimony and give her what, in the exercise of a sound discretion, it thought she would be entitled to under the circumstances of the case.

In the absence of a statute conferring upon the court the power to apportion the community property between the spouses, giving to the one a greater interest therein than such party had in the community, the court has no such power. Nor, absent a statute so providing, has the court the power upon decreeing a divorce, to transfer to the wife a portion of the property of the husband, 14 Cyc. 780; Alexander v. Alexander, 140 Ind. 560. As said by Mr. Justice Parker in the case of Hodges v. Hodges, 22 N. M. 192, 159 Pac. 1007:

"Without pursuing this subject further we think it well established by the great weight of authority that the powers of the court in matrimonial matters in this country are to be determined entirely upon the terms of the statutes conferring jurisdiction."

We do not understand that appellee takes issue with the above statement of the law. He contends that the power is conferred upon the court by section 2778, Code 1915, which was a portion of the act of 1901, which was left intact by the act of 1907, relative to marriage relations. This section reads as follows:

Beals v. Ares, 25 N. M. 459.

"In any suit for dissolution of the bonds of matrimony, division of property, disposition of the children, or for alimony, the court in term time, or judge in vacation, may make and enforce, by attachment or otherwise, such order to restrain the use or disposition of the property, of either party, or for the control of the children, or to provide for the support of the wife during the pendency of the suit, as in its or his discretion may seem just and proper; and may make such order, relative to the expenses of this suit, as will ensure the wife an efficient preparation and presentation of her case; and, on final hearing, may allow the wife such a reasonable portion of the husband's separate property, or such a reasonable sum of money to be paid by the husband, either in a single sum, or in installments, as alimony, as under the circumstances of the case may seem just and proper, and, on such hearing, may set apart out of the property of the respective parties, such portion thereof, for the maintenance and education of their minor children, as may seem just and proper, and may make such an order for the guardianship, care, custody, maintenance, and education of said minor children, or with reference to the control of the property of the respective parties to the suit or with reference to the control of the property decreed or fund created by the court for the maintenance and education of said minor children, as may seem just and proper; and may modify and change any order in respect to the guardianship, care, custody, maintenance or education of said children, whenever circumstances render such change proper. Said district court shall have exclusive jurisdiction of all matters pertaining to said guardianship, care, custody, maintenance and education of said children, and with reference to the property decreed or funds created for their maintenance and education, so long as they, or any of them, remain minors; and if any of the property decreed or funds created for the maintenance and education of the children, as aforesaid, shall remain on hand and be undisposed of at the time the minor children become of age, the same may be disposed of by the court as unto it may seem just and proper."

His contention is based upon that portion of the section which says:

"and may make such order with reference to the control of the property of the respective parties to the suit as may seem just and proper."

When action is brought for divorce, division of property, disposition of the children or alimony, under this statute, the court in term time, or a judge in vacation, may "restrain the use or disposition of the property of either party." (This clearly has reference to tempor-

ary relief or for control of the children, or to provide for the support of the wife during the pendency of the suit, etc.) The statute then further provides for the payment by the husband to the wife of alimony, as the court should find proper, and on such hearing the court may set apart, out of the property of the respective parties, sufficient to maintain the minor children; may make orders for their guardianship, care and custody, etc., ''or with reference to the control of property of the respective parties to the suit as may seem just and proper.'' This latter clause evidently has reference only to the ''control'' of the property of the parties for the purpose of carrying out the necessary orders with reference to alimony, care and education of the children provided for by the statute, for no power is given to divest the wife of any title to property.

The best proof that this section was not intended to have reference to a division of the property is the fact that section 30 of the same act (Laws 1901, chapter 62) provided ''Upon division of property from any cause whatever, the husband and wife, as between themselves, each shall be entitled to an undivided one-half interest in all of that part of the others separate estate which may have been acquired by such other during marriage by onerous title.'' To place the construction upon section 2778 proposed by appellee would completely contradict section 30 of the same act. No such construction can be placed thereon, for no reference is made in any part thereof to the court's power or authority, in its discretion to apportion the community property among the parties.

It is true that section 30 was repealed by the Act of 1907, but in order to ascertain the legislative intent in enacting section 2778 (section 27, chapter 62, Laws 1901) we must look to that entire act and determine the effect of the language used. When this is done, it is at once apparent, as we have said, that it was not the intention of the legislature to confer upon the court the power

to take from the wife and award to the husband any portion of the wife's interest in the community property. The section does confer upon the court the power to take from the husband such portion of his property as under the circumstances of the case may seem just and proper and award it to the wife as alimony for her maintenance and support, and may further require the husband to pay such alimony as to the court may seem just and proper. And the case of Hodges v. Hodges, supra, goes no further than this. In support of his contention, appellee cites the cases of Miller v. Miller, 80 Pac. (Wash.) 816; Viertel v. Viertel, 212 Mo. 562; Lemp v. Lemp, 155 S. W. 1057; Blair v. Blair, 121 Pac. (Utah) 19; Rosenberger v. Rosenberger, 150 S. W. (Ky.) 1023; Cozard v. Cozard, 92 Pac. (Wash.) 935; Morgan v. Morgan, 38 Pac. (Wash.) 1054; Tausig v. Tausig, 100 Pac. (Wash.) 757. But an examination of these cases will show that in each case there was a statute conferring upon the court the power, in its discretion, to give each party what was just and equitable of the community property, or to dispose of the property of the separate spouses likewise. And the statutes of the various states, as a general rule, leave this question to the discretion of the court and undoubtedly experience has demonstrated the wisdom of such statutes. But because, in the judgment of this court it would be the best policy to leave this to the discretion of the court in all cases, does not warrant us in placing such a construction upon the language of the statute in question when we have shown it is not warranted by the language employed.

In McKay on Community Property, section 411, the author says:

"The local statute of the state or territory relating to divorce, in general, provides for a division in the action of divorce, of the common property. The general rule is to divide it equally between the former spouses, but the statute sometimes provides that the court in the action for divorce, may make a different division."

The author further says in section 413:

"When there is no allegation as to community property, and no decree or judgment on the point, the decided weight of authority is that the former spouses hold the property as tenants in common, subject, of course, to the payment of the debts of the marital partnership."

Many authorities are cited in support of the text.

Under section 2778, Code 1915, the court has the power upon decreeing a divorce to set apart such portion of the community property, or of the separate property of the spouses, as may be necessary for the proper support and maintenance of the children born as a result of the marriage, and this could be done regardless of any agreement which the parties might have made between themselves or whether the court was so requested to do or not. In all cases it is the duty of the court upon decreeing a divorce to see that the proper provision is made for the children.

But in this case at the time the divorce was decreed, the court made no order in this regard and its jurisdiction over the property of the respective parties was not invoked.

From the foregoing, the following propositions may be accepted as settled:

1. That under the law in this jurisdiction, the wife's interest in the community property is equal with that of the husband; that while he is by statute made the agent of the community and given dominion and control over the community property during the continuance of the marriage relation, his interest in the property by reason of such fact is not superior to that of his wife.

2. That the wife does not forfeit her interest in the community property by the commission of adultery.

3. That there is no statute in this state conferring

upon the district court the power to divide the community property between the parties at its discretion; that while it has power to divide the property, this power does not extend further than to set apart to each of the spouses their undivided half interest in the property.

4.   That the district courts have the power in all cases to set apart such portion of the community property, or of the property of the respective spouses, as in its discretion may be necessary for the proper support, care and maintenance of the children born as a result of the marriage.

Thus we are brought to a consideration of the ultimate question in this case, which is as to whether or not the contracts, deeds and bills of sale, execuied by the appellant in favor of appellee, whereby she sold and transferred to appellee all of her separate property and all of her interest in the community property, are subject to cancellation for fraud, either actual or constructive, duress, etc.

The facts as they appear in the transcript of record, as we have said, are practically without dispute.   The appellant was called from her home to the office of appellee's attorney, John W. Armstrong, and there confronted in the presence of the appellee's banker with a charge of adultery.   The attorney had prior to her going to his office prepared documents whereby all of her separate property and the community property of the parties were conveyed to appellee by appellant. She was told by the attorney that appellee would give her $4,000 for executing the documents.   She was not advised as to what her interest in the property was, or the extent and value of the property.   She was not represented by counsel, had no adviser, and was not requested to secure counsel or independent advice.   That she executed the deeds, contract and bills of sale under these circumstances; that the community property was

of the value of between $100,000 and $200,000 subject
to certain indebtedness; that her interest in the proper-
ty less the debts was worth between $35,000 and
$75,000. The uncertainty of the value of her interest is
due to the fact that the trial court was of the opinion
that the value of the property was wholly immaterial
and the evidence upon this matter is not satisfactory.
All the evidence offered was put in by the appellant.

[12-14] The statute, section 2750, Code 1915, pro-
vides:

"Either husband or wife may enter into any engagement
or transaction with the other, or with any other person
respecting property, which either might, if unmarried; sub-
ject, in transactions between themselves, to the general rules
of common law which control the actions of persons occupy-
ing confidential relations with each other."

This statute was copied from California, and appears
there as section 158 Civil Code, with this distinction,
however, that our statute says:

"Subject, in transactions between themselves to the gen-
eral rules of common law, which control the actions of persons
occupying confidential relations with each other."

While The California statute says:

"Subject, in transactions between themselves, to the gen-
eral rules of common law, which control the actions of persons
confidential relations with each other, as defined by the title
on trusts."

In that State the Legislature has embodied in statu-
tory form the principles of the common law on the sub-
ject. In the case of Doliver v. Doliver, 94 Cal. 642, the
court said.

"The plaintiff and defendant were husband and wife, and
by virtue of that relation personal trust and confidence had
been created between them, which imposed upon the de-
fendant the obligation of exercising the highest good faith
towards the plaintiff in any dealings between them, and pre-
cluded him from obtaining any advantage over her by means
of any misrepresentation, concealment, or adverse pressure.
(Civ. Code, Sec. 2228.) This relation and the obligation aris-
ing from it were not destroyed by the mere fact that an action

for divorce was pending between them. They were still husband and wife, and so long as that relation existed between them, the law would not permit any inquiry into the extent of the trust and confidence which is presumed to be placed by one in the other; nor can the husband, by bringing an action for divorce against his wife, divest himself of the obligations which are imposed upon him by virtue of such relation."

From this will be seen that the relation of the parties was not altered by the fact that the husband was suing for divorce and that he owed to the wife the same rights, and duties existing by virtue of the marriage relation, notwithstanding the contemplated divorce.

In the case of Stiles v. Cain, 134 Cal. 170, the court said:

"It will be seen that the presumption of unfairness is against the trustee, and in favor of the beneficiary. The beneficiary may get an advantage from the trustee. If the transaction is a fair one, each would get an advantage from the other. The presumption could not be in favor of and against each at the same time, that he obtained his advantage without sufficient consideration, and by the use of undue influence. These conflicting presumptions are just as impossible in the case of husband and wife. Neither husband nor wife is a technical trustee of the other in respect to the subject of these transactions, but the section is to be construed as all laws should be, with reference to conditions and circumstances. By our statutes, so great a change has been made in the property rights of a wife, from those formerly existing, that it may be said that she is thereby, with reference to her separate property, emancipated from the control of her husband. This emancipation from a control which was previously quite complete was largely accomplished by section 158, of the Civil Code. But in giving her the right freely to contract in regard to property with her husband, the legislature naturally sought to give her some protection from the influence of her husband. The right to control her own affairs would not free her from what usually in fact is, and is always presumed to be, the predominating influence of her husband. At common law she could enter into no contract, and her husband could not convey property to her, but only to a trustee for her benefit. Her civil existence was merged in that of her husband. She could not be held responsible for a common assault committed in his presence, but he would be liable for such acts on her part. In fact, the entire framework of the law in regard to the property rights of married women rested upon the assumption of the dominion of the husband over the wife. This section was a change in the system, in favor of the wife, and the protection here furnished is to her."

And the same rule was announced by the court in the case of McDougall v. McDougall, 135 Cal. 316.

It will thus be seen that in California, in all cases under this statute, the husband is the trustee and the wife the beneficiary. Under this rule, as we shall later show, the burden would be upon the husband in all transactions between them to show the fairness of the transaction, the adequacy of the consideration and the absence of fraud and undue influence.

In this case we are not required to decide that the statute here should receive the same construction; that is, we are not required to go as far as these cases, for we may stop at the rule as announced by the California supreme court in the case of White v. Warren, 120 Cal. 322, which was criticized in the later case as not affording the wife the protection intended by the statute. The court said:

"It is only in those transactions where one secures an advantage over the other that the confidential relation existing between them may be invoked and the equitable principles laid down in chapter of the act upon trusts be called into operation."

For here undoubtedly the husband secured a decided advantage over the wife in the transaction. It appears that he was the manager of the community property, as contemplated by the code, and it is not shown that the wife had any knowledge as to the extent and value of the community property. So we may safely assume that at the time of the transaction in question, the parties stood toward each other as trustee and beneficiary, the husband being the trustee and the wife the cestiu que trust, and upon this basis determine the validity of the contracts and deed in question.

In Perry on Trusts, (6th Ed.) section 194, the author says:

"Lord Hardwicke's 'third species of fraud may be presumed from the circumstances and condition of the parties contract-

ing; and this goes further than the rule of law, which is, that fraud must be proved, not presumed.' At law, fraud must be proved; but in equity there are certain rules prohibiting. parties bearing certain relations to each other from contracting between themselves; and if parties bearing such relations enter into contracts with each other, courts of equity presume them to be fraudulent, and convert the fradulent party into a trustee. And herein courts of equity go further than courts of law, and presume fraud in cases where a court of law would require it to be proved; that is, if the parties within the prohibited relations or conditions contract between them-selves, courts of equity will avoid the contract altogether, without proof, or they will throw upon the party standing in this portion of trust, confidence, and influence the burden of proving the entire fairness of the transaction.     Thus, if a parent buys property of his child, a guardian of his ward, a trustee of his cestui que trust, an attorney of his client, or an agent of his principal, equity will either avoid the contract al-together, without proof or it will throw the burden of proving the fairness of the transaction upon the purchaser; and, if the proof, fails, the contract will be avoided, or the purchaser will be construed to be a trustee at the election of the other party.     The ground of this rule is, that the danger of allow-ing persons holding such relations of trust and influence with others to deal with them is so great that the presumption ought to be against the transaction, and the person holding the trust or influence ought to be required to vindicate it from all fraud, or to continue to hold the property in trust for the benfit of the ward, cestui que trust, or other person holding a similar relation."

In Pomeroys Equity Jurisprudence, Vol. 2, Section 955, the author says:

"The single circumstances now to be considered is the ex-istence of some fiduciary relation, some relation of confidence subsisting between two parties. No mental weakness, old age, ignorance, pecuniary distress, and the like is assumed as an element of the transaction; if any such fact be present it is incidental, not necessary, immaterial, not essential. Nor does undue influence form a necessary part of the circumstances, except so far as undue influence, or rather the ability to ex-ercise undue influence, is implied in the very conception of a fiduciary relation, in the position of superiority occupied by one of the parties over the other contained in the very defini-tion of that relation. This is a most important statment, not a mere verbal criticism. Nothing can tend more to produce confusion and inaccuracy in the discussion of the subject than the treatment of actual undue influence and fiduciary relations as though they constiuted one and the same doctrine."

In the following section, 956, the author says:

Beals v. Ares, 25 N. M. 459.

"It was shown in the preceding section that if one person is placed in such a fiduciary relation towards another that the duty rests upon him to disclose and he intentionally conceals a material fact with the purpose of inducing the other to enter into an agreement, such concealment is an actual fraud, and the agreement is voidable without the aid of any presumption. We are now to view fiduciary relations under an entirely different aspect; there is no intentional concealment, no misrepresentation, no actual fraud. The doctrine to be examined arises from the very conception and existence of a fiduciary relation. While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption."

In the case of Rhodes v. Bates, L. R. 1 Cha, 252, Turner, L. J., said:

"I take it to be a well-established principle of this court that persons standing in confidential relations towards others cannot entitle themselves to hold benefits which those others may have conferred upon them, unless they can show to the satisfaction of the court that the persons by whom the benefits have been conferred had competent and independent advice in conferring them. This, in my opinion is a settled general principle of the court, and I do not think that either the age or the capacity of the person conferring the benefit, or the nature of the benefit conferred, affects the principle. Age and capacity are considerations which may be of great importance in cases in which the principle does not apply; but I think they are but of little, if any, importance in cases to which the principle is applicable. They may afford a sufficient protection in ordinary cases, but they can afford but little protection in cases of influence founded upon confidence."

In section 957, Pomeroy's Equity Jurisprudence, the author says:

"There are two classes of cases to be considered which are somewhat different in their external forms, and are governed by different special rules, and which still depend upon the single general principle. The first class includes all those instances, in which the two parties consciously and intentionally deal and negotiate with each other, each knowingly taking a part in the transaction, and there results from their dealing some conveyance, or contract, or gift. To such cases the principle literally and directly applies. The transaction

is not necessary voidable, it **may** be valid; but a presumption of its invalidity arises, which can only be overcome, if at all, by clear evidence of good faith, of full knowledge, and of independent consent and action."

And this relation at common law extended to transactions between husband and wife. Section 963, Vol. 2. Pomeroy's Equity Jurisprudence.

In the case of Holt v. Agnew 67 Ala. 360, the court said:

"There are relations in life, in which influence is acquired by the one party, and confidence reposed by the other—relations of which we usually speak as **confidential,** that open the way and afford opportunity for impositions, or undue influence, and yet, rather close the door to, and render difficult, the detection of its exercise. Such are the known relations of the trustee, and **cestui que trust,** guardian and ward, attorney and client, principal and agent, husband and wife, but the number or character of the relations are not defined by law: 'all the variety of relations in which dominion may be exercised by one person over another,' fall within the general term **confidential relations.** When, in such relation, the party subject to imposition, to undue influence, enters into a contract with, or makes a disposition of property to the other, from which detriment is sustained by the one, and benefit derived by the other, upon principles of public policy, there is no presumption of consent; the act or contract does not of itself import it. The law casts the burden of proving the transaction fair and just, and the free consent of him who sustains the detriment, and is subject to the influence, upon the party who takes the benefit, and in whom trust was reposed. Johnson v. Johnson, 5 Ala. 90; Juzan v. Toulmin, 9 Ala. 684; Lowrey v. Fergusson, 54 Ala. 510; Malone v. Kelly, ib. 532; Dickinson v. Bradford, 59 Ala. 581; Lanier v. Waddell, 62 Ala 347. In all these cases it is a very material and important circumstance, which may relieve the transaction of much of the suspicion attaching to it, and tend to show the spontaneity of the **cestui que trust,** if he had full opportunity to obtain, and in fact did obtain competent and independent advice in reference to the transaction from counsel, or from disinterested friends, who were bound to him, and not subject to the influence of the trustee.—Kerr on Fraud 151; Malone v. Kelly, 54 Ala. 546. On the other hand, if the **cestui que trust** has not such advice, and the trustee has it, and is acting upon it, the fact is as material and important, and it may be safely said, the transaction can but seldom stand vigorous judicial investigation."

Many other cases might be cited to the same effect and announcing the same principles, but the rule is so

well settled that the multiplication of authorities is un-necessary. We might, however, refer with profit to the case of Harrison v. Harrison, 21 N. M. 373, 155 Pac. 356, L. R. A. 1916 E. 854, decided by this court, in which the subject of confidential relations is thoroughly discussed as applied to the case of guardian and ward.

In view of the foregoing authorities, the following propositions may be accepted without question:

1. That the transaction in question was presump-tively fraudulent;

2. That the duty devolved upon the husband to show (a) the payment of an adequate consideration, (b) full disclosure by him as to the rights of the wife and the value and extent of the community property, and (c) that the wife had competent and independent advice in conferring the benefits upon her husband.

As the appellee in the case at bar met no one of the foregoing requirements by his proof, it is unnecessary to set forth additional requirements, if such there are. The appellee not having met the burden which the law imposed upon him, the court should have found the is-sues for the appellant.

We do not mean to hold that the court should have set apart to the appellant the one-half of the commun-ity property or should have given her the equivalent in a money judgment, for certainly it was the duty of the court, upon the application to it by appellant for equitable relief, to have compensated appellee for the past support and maintenance of the children, which were awarded him by the decree of divorce and to have made suitable provisions for their future maintenance and education. This should have been done by making the deduction from the whole community property, or from the portion belonging to the appellant.

For the foregoing reasons the case is reversed and

remanded to the district court of Eddy County with directions to set aside the contract and deeds in question, to ascertain the value and extent of the community property, to make suitable provision for the support and maintenance of the children, and to award the appellee compensation for such support and maintenance since the divorce was granted, and to divide the community property between the parties, subject to such allowance as may be made for the benefit of the children, and it is so ordered.

RAYNOLDS, J., concurs.

SYLLABUS BY THE COURT.

