[No. 2604.   May 23, 1922.   Rehearing Denied Nov. 10, 1922.]

## LANDRUM v. HARVEY

### SYLLABUS BY THE COURT

(1) At common law, the innkeeper was an insurer of the goods, money, and baggage of his guest, except for the acts of God, the public enemy, or the guest himself.    P. 246

(2) Where it does not conclusively appear that the property of the guest was lost through her own negligence, the court should not take the case from the jury.    P. 247

(3) In guest's action against innkeeper for loss of rings prior to enactment of Laws 1921, c. 104, allegations that employes of defendant "carelessly and negligently" removed

rings or permitted them to be removed from the place where the guest had put them, and carelessly and negilgently permitted the rings to be lost, **held** not to limit the guest to the theory that the innkeeper was negligent, or to preclude recovery on the theory that the innkeeper, under the common-law rule, was the insurer of the guest's property.
P. 246

(4)   A guest is not bound to conceal his valuables from hotel employes.                                                    P. 249

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by L. Billie Landrum against Fred Harvey. Judgment for defendant, and plaintiff appeals.   Reversed and remanded.

Marron & Wood, of Albuquerque, for appellant.

Reid, Hervey & Iden, of Roswell, for appellee.

### OPINION OF THE COURT

DAVIS, J.   Appellant, who was a guest at a hotel belonging to appelle, alleged the loss of three valuable rings from her room in a hotel.   She brought this action to recover their value.   The trial court instructed the jury for appellee.   This appeal makes necessary a determination of the liability of innkeepers in this state at the time this loss incurred, and an application of it to the facts proven, and, since there was at that time no statute, we look to the common law for the rule applicable.   Counsel for appellee contend that we must accept today the common law in force in England upon the separation of the colonies in 1776, and that we must look for guidance only to decisions declaring the law of that period, without regard for judicial opinions expressed since that time, whether in England or in the American states. We are not impressed with this argument.

In Beals v. Ares, 25 N. M. 459, 483, 185 Pac. 780, the subject of the common-law adoption here is fully discussed.   The court, quoting from a California case (Lux v. Haggin, 69 Cal. 255, 4 Pac. 919, 10 Pac. 674), said that the act in adopting the common law of England, designates the common law as interpreted in the English

courts and also the courts of the states of the Union that adopted that law. As we adopted only such parts of the English common law as were applicable to our conditions and circumstances, and which were in force at the time of our separation from the mother country, American decisions are important as precedents.

There seems no 'dearth of decided cases, ancient and modern, upon the duty owed by an innkeeper to his guest, all attempting to declare the common law, and they are sharply divided into two classes in defining the grounds for his liability, which is generally determinative of the decision. One class holds that any liability on his part must rest on negligence, the other that he is the insurer of the property of his guest, except only if the loss occurred by act of God or the public enemy, or through the affirmative act or negligence of the guest himself. Since the happening of the loss on which the present case is based, the Legislature has abolished the common-law liability of innkeepers in this regard, and the subject is now regulated by statute. L. 1921, c. 104. Any lengthy discussion on the rule in force in New Mexico prior to that time would be of no value as a precedent for the future, nor would it serve any other useful end. We shall therefore deal with it very briefly.

In an early case in this jurisdiction, Horner v. Harvey, 3 N. M. (Gild.) 307, 5 Pac. 329, dealing with another phase of the innkeepers' liability, the court said:

"When the traveler comes to an inn and is accepted, he instantly becomes a guest. The innkeeper when he accepts him and his goods becomes his insurer, and the innkeeper must answer in damages for the loss or injruy of all goods, money, and baggage of his guest, brought within his inn and delivered into his charge and custody, according to the usage of travelers and innkeepers."

In Bishop, Noncontract Law, § 1173, the general rule is stated as follows:

"He is an insurer of the safety of whatever baggage or other things he receives into his inn from the guest, whether in fact negligent in their keeping or not, except against the

two overwhelming forces termed the acts of God and of the public enemies. For example, if they are stolen or burned without the fault either of the guest or of the landlord, the latter must pay for them."

A number of cases are collected in the note to Schultz v. Wall, 8 L. R. A. 97.

[1] Without amplifying citations, we think the better rule to be that the innkeeper, in the absence of statute, is answerable as an insurer, rather than only for negligence.

[3] Appellee contends that, by her pleading appellant limited herself to the negligence theory and can recover only upon that. Her allegations were to the effect that she became a guest at appellee's hotel; that that she had with her in her room at the hotel the three rings which belonged to her and which she customarily wore; and that appellee, through its agents and servants, carelessly and negligently removed these rings or permitted them to be removed from the place where she had put them, and carelessly and negligently lost them or permitted them to be lost; and that she was free from negligence in the matter. While the words "carelessly and negligently are used as charactrizing appellee's actions, they were unnecessary. If these words are omitted, the complaint still states a good cause of action, for, as we have seen, the liability is not predicated upon negligence. It arises from the relationship of innkeeper and guest, and this relationship is fully pleaded. The facts being fully alleged, appellant could recover upon any theory of law which they sustain.

The court instructed the jury to return a verdict for appellee, upon the ground that the negligence of appellant contributed to the loss of her rings so as to bar her recovery. The court, in other words, held that the acts of appellant herself constituted negligence in law and were at least a contributing cause of her loss. Such matters are ordinarily for the jury. The correctness of this action of the trial court is the only question directly before us, and a consideration of the evidence is necessary for its determination.

Appellant was a guest at appellee's hotel for a short time, during a portion of which she was ill. Her habit was to wear her rings during the day and at night to take them off and put them inside the slip of one of the pillows of her bed. She did this on the evening of February 6th, while she was still ill. The following morning she was allowed to leave her bed for the first time, and was occupying a chair near the window of her room. She had left the rings inside the pillow, apparently from forgetfulness. One of the maids employed by the hotel came in to do the usual morning work, part of which was to change the bed linen. She removed the slip from the pillow, shook it out on the sheets, then rolled everything together and put it outside the door. There it was gathered up by a colored boy and taken to the hotel linen room, where it was sorted by hotel employees and then thrown down a chute leading to the laundry. A short time after the linen had been taken out of the room the maid, who was still working in the room, called appellant's attention to a ring which she said she had just picked up on the floor. Appellant said that all the rings had been in the pillow case. The hotel management was notified and a search conducted, extending from the room of appellant to the linen chute. The linen was still there, and was examined. No rings were found. The hotel employees who might have had the opportunity to take the rings, including the maid, testified positively that they did not do so, excepting the colored boy, who removed the linen and who was not called as a witness.

[2] In the light of the general rules already stated governing the liability of appellee, does it so conclusively appear from these facts that the rings were lost through appellee's own negligence that the court could properly take the decision of the matter away from the jury? Or, to express the question in the contrary form. Were these facts such that neither in the circumstances themselves nor by reasonable deductions from them could the jury find a legal basis for a verdict in favor of the appellant? It is not a question merely of the

weight of the evidence, but of whether or not there was sufficient evidence to submit the matter to the decision of the jury, and we must therefore consider it from the standpoint of the appellant, giving to her the benefit of all reasonable inferences.

The peculiarity of this case, and the source of the difficulty in deciding it, is that, while it is certain that the rings disappeared, the manner of their loss is not ascertained.   After the moment when the rings were placed in the pillow slip the preceding evening, they were never seen again.   In attempting to divine the cause of their loss, we call upon imagination rather than reason.   It is within the bounds of possibility that they were never lost at all, but are still in the possession of appellant; that the companion of appellant took them; and they fell from the slip when the maid shook it and that she kept them; that she found on the floor the three rings when she was sweeping, and returned only one; that they went into the hall with linen and that the colored boy who carried it to the linen room found and kept them; that they were stolen by the maid in the linen room; or that the persons who subsequently searched found and kept them.   Where nothing is certain, anything is possible.   If we knew who carried away the rings, the determination of liability would be simple. In the absence of this knowledge, it becomes necessary to decide upon whom rested the duty to furnish it, and thus ascertain whether appellant failed in her proof in support of her action, or appellee failed to prove its defense.

Assuming the truth of appellant's testimony, as we must do, a prima facie case of liability on the part of appellee was shown.   When last seen the rings were in the hotel room occupied by appellant as a guest.   The jury might well have believed that they were stolen by some employee, whether from the room or after their removal, but while still within the hotel, for they certainly disappeared in some part of the hotel.   Since appellee was in the position of an insurer of the safety of this property, these facts establish its liability.   The obligation

then rested upon appellee to show that the case fell
within one of the classes excepted from its liability.
This it attempted to do by proving that the loss ocurred
through appellant's own negligence, proof of which
would be a good defense. We are not able to say affirm-
atively that it 'did this, and the trial court was in error
in holding that the proof upon this point was so con-
clusive as to leave nothing for the jury to consider.

[4] The placing of the rings in the pillow slip for
the night cannot be conclusively called negligent. In-
deed that would seem a good method of concealment and
conducive to safety. Leaving them there and allowing
the maid to shake out and remove the linen was care-
less. But was it negligence in law? If its only result
was that the rings thus came to the attention of an em-
ployee, who took advantage of the opportunity and stole
them, the carelessness was not the cause of the loss. A
guest is not bound to conceal his valuables from hotel
employees. Taking these rings from the sheet onto
which they may have been shaken, or from the floor on
which they may have fallen would be no different in
law from taking them from a dressing table or from a
jewel case. The question is not as to whether, because of
appellant's actions, an employee had the opportunity to
take them. It was the duty of appellee to furnish em-
ployees who would resist such opportunities.

Under the evidence in this case, the jury might con-
sider the whole story of appellant so improbable, in the
light of the testimony of the other witnesses, as to dis-
believe her and conclude that no loss occurred. On the
other hand it might adopt her testimony and disbelieve
the hotel employees who testified to their innocence in
the matter, and therefore find appellee liable. We ex-
press no opinion as to the weight of the evidence. The
jury, not the court, determines the facts, and this case
seems peculiarily suitable for a jury decision. We only
determine that there was sufficient evidence on appel-
lant's behalf so that the case should have been submitted
to the jury.

It follows that the judgment must be reversed, and the case remanded for a new trial; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.